NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RENEE P., RICHARD P.,
*Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.P.,
*Appellee*s.

No. 1 CA-JV 15-0171
FILED 11-19-2015

Appeal from the Superior Court in Maricopa County
No.  JD23334
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Mesa
By Eric Knobloch
*Counsel for Appellee Department of Child Safety*

Robert D. Rosanelli, Phoenix
*Counsel for Appellant Renee P.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Richard P.*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1          Renee P. (Mother) and Richard P. (Father) appeal from the termination of their parental rights to A.P. (Child).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Child was born in January 2013.  In March 2013, the Department of Child Safety (DCS) took custody of her due to Mother's and Father's methamphetamine use and ongoing domestic violence.  DCS filed a petition alleging that Child was dependent because Mother and Father were neglecting her due to substance abuse and engaging in domestic violence in the home.  The juvenile court subsequently adjudicated Child dependent.

¶3          Before returning Child to Mother's and Father's care, DCS required that they abstain from using drugs, refrain from engaging in domestic violence, and demonstrate a safe and stable home.  To help them make these changes, DCS offered substance abuse testing, substance abuse treatment, psychological and psychiatric evaluations, domestic-violence and anger management counseling, individual counseling, parent-aide services, supervised visitation and transportation.

¶4          Initially, Mother and Father participated in all required reunification services.  In August 2013, they began having unsupervised visits with Child, but those visits ended one month later after Mother admitted to using drugs and Father tested positive for methamphetamine.  In February 2014, Mother and Father again began unsupervised visits with Child through a family reunification team.  However, those visits ended two months later after the team noted "serious concerns about the parents' instability, concerns of domestic violence, and concerns of substance abuse."

¶5        At the April 2014 report and review hearing, DCS moved to change the case plan to severance and adoption, citing the parents' chronic history of substance abuse and Child's fifteen months in out-of-home care. The court denied the oral motion, but granted DCS leave to file a severance motion "if the parents [were] not 100% compliant with services." After the hearing, Mother and Father began participating in services again.

¶6        At the June 2014 report and review hearing, Mother requested that the juvenile court grant her physical custody of Child. The juvenile court granted the motion "so long as [Mother] does not allow [Father] to have any access to [Child]" noting that the parents "still need to participate in and successfully complete domestic violence services." After receiving physical custody of Child, Mother began to miss substance abuse sessions. At the end of July 2014, Mother and Father relapsed and subsequently tested positive for methamphetamine.

¶7        After Mother's positive drug test, Mother and Child visited Father, in violation of the court's order, and Mother took Child to Florida. At the August 2014 report and review hearing, DCS requested a change in case plan to severance and adoption, which the juvenile court granted. DCS subsequently filed a motion to terminate Mother and Father's parental rights pursuant to Arizona Revised Statutes (A.R.S.) section 8-533.B.3, chronic substance abuse and under -533.B.8(a) and (c), nine and fifteen months' out-of-home care, respectively (West 2015).[1]

¶8        In September 2014, Mother returned to Arizona and returned Child to DCS. Mother and Father both subsequently tested positive for methamphetamine. Between September 2014 and the February 2015 severance hearing, Mother and Father have maintained sobriety and compliance with reunification services.

¶9        At the February 2015 severance hearing, both Mother and Father admitted they were unable to parent while under the influence of methamphetamine. DCS case manager Susan Barker testified that Mother and Father had not demonstrated they were able to remedy the circumstances that caused Child's out-of-home placement because during the two years of the dependency, both parents would demonstrate three to six months of sobriety and then relapse. Barker further testified that Mother and Father would not be able to exercise proper parental care and control in the near future because both had over a twenty-year history of substance

_____

[1]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

abuse, and despite the many services that DCS had offered, they were unable to maintain sobriety throughout the dependency. Barker concluded that Mother and Father's substance abuse impacted their ability to parent and that severance would be in Child's best interests.

**¶10** The juvenile court granted severance, finding termination proper under A.R.S. § 8-533.B.3, chronic substance-abuse and -533.B.8(c), fifteen months' out-of-home care and that severance was in Child's best interests. Mother and Father timely appealed and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235.A, 12-120.21.A.1, and -2101.A.1.

## DISCUSSION

**¶11** We review an order terminating parental rights for an abuse of discretion and will affirm if the ruling is supported by sufficient evidence. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). "We view the evidence in the light most favorable to sustaining the [juvenile] court's ruling." *Id.* The juvenile court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We will only disturb the juvenile court's determination if it is clearly erroneous. *Id.* A determination is clearly erroneous if it is "unsupported by substantial evidence." *Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 534, ¶ 7 (App. 2014).

> To terminate parental rights, a juvenile court must first find by clear and convincing evidence . . . the existence of at least one statutory ground for termination pursuant to [A.R.S. § 8-533.B.], and must also find by a preponderance of the evidence that termination is in the child's best interests.

*Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

I.     Grounds for Termination

**¶12** The juvenile court concluded that severance was proper under A.R.S. § 8-533.B.3, chronic substance abuse and -533.B.8(c), fifteen months' out-of-home care. We find that termination of Mother's and

Father's parental rights to Child was proper under A.R.S. § 8-533.B.8(c), fifteen months' out-of-home care.[2]

¶13        To terminate parental rights under § 8-533.B.8(c), the court must find that (1) a child "has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order;" (2) "the parent has been unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement;" and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."  A.R.S. § 8-533.B.8(c).  In its determination, the court must also consider "the availability of reunification services to the parent and the participation of the parent in these services."  A.R.S. § 8-533.D.

¶14        Mother and Father do not dispute that Child has been in out-of-home care for fifteen months or longer, nor that DCS provided appropriate and available reunification services.  Accordingly, we only consider whether sufficient evidence supports the juvenile court's findings that (1) Mother and Father were unable to remedy the circumstances that caused Child's out-of-home placement, and (2) there is a substantial likelihood that Mother and Father will not be capable of exercising proper and effective parental care and control over Child in the near future.

¶15        Sufficient evidence supports the juvenile court's finding that Mother and Father are "unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement."  A.R.S. § 8-533.B.8(c).  Mother and Father argue that they have remedied the circumstances that led to Child's out-of-home placement.  To support their arguments, Mother and Father argue, that since approximately September 2014, the time of their last relapse, they have successfully participated in all offered reunification services.  Although participation in such services is commendable, we do not reweigh the evidence presented, but only review the ruling to ensure it was supported by sufficient evidence.  *See In re Andrew A.*, 203 Ariz. 585, 587, ¶ 9 (App. 2002).

---

[2]        Because A.R.S. § 8-533.B requires that only one statutory ground for termination be satisfied, we need not review the applicability of A.R.S. § 8-533.B.3.  *See Jesus M.*, 203 Ariz. at 280 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

¶16    The appropriate inquiry is whether there were circumstances at the time of severance that prevented Mother and Father from being able to exercise proper and effective parental care and control over Child. *See Marina P. v. Arizona Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007). The record sufficiently supports the juvenile court's conclusion that Mother and Father had not rectified the circumstances at the time of severance that led to Child's out-of-home placement.

¶17    DCS required that the parents abstain from substance use, refrain from engaging in domestic violence, and demonstrate a stable home. Throughout the dependency, DCS offered extensive reunification services to help Mother and Father make these changes. However, during the nearly two years that Child remained in out-of-home care, Mother and Father were unable to remedy the circumstances that brought Child into care. Despite their recent sobriety, Mother and Father have continually relapsed on methamphetamine.

¶18    Barker testified that because of the parents' history of substance abuse and relapse, Mother and Father "haven't demonstrated behavioral changes that would make them safe to parent [Child]" at the time of severance. Barker further testified that to remedy the circumstances that caused Child to be in out-of-home care, Mother and Father would need to show "[l]ong term sobriety, acceptance of the issues, understanding the severity of their meth use, engaging and completing treatment services, [and completion of] domestic violence counseling." Barker concluded that DCS would have "serious concerns about returning [Child] without at least another six months of sobriety."

¶19    Based on Mother's and Father's history of substance abuse, relapse, and their need to demonstrate long term sobriety, sufficient evidence also supports the juvenile court's determination that they will not be capable of exercising proper and effective parental care and control over Child in the near future. *See* A.R.S. § 8-533.B.8(c). Despite Mother's and Father's recent progress with reunification services, the juvenile court was free to rely on all of the evidence DCS presented to the contrary in rendering its decision. *See Jesus M.*, 203 Ariz. at 280, ¶ 4 (noting that the juvenile court is in the best position to consider all evidence, "observe the parties," and "judge the credibility of witnesses").

II.    Child's Best Interests

**¶20** Only Father argues that the juvenile court erred by finding termination was in Child's best interests. "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990). "Factors considered are whether: 1) an adoptive placement is immediately available; 2) the existing placement is meeting the needs of the child; and 3) the children are adoptable." *Raymond F. v. Arizona Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (citations omitted).

**¶21** Barker testified that Child would benefit from severance and would be harmed if returned to Mother and Father, Child is currently living in a permanent and stable foster home with maternal relatives, Child's foster parents are willing to adopt her and the foster parents are willing to meet all of Child's needs. Therefore, we find that sufficient evidence supports the juvenile court's determination that severance is in Child's best interests.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's and Father's parental rights to Child.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama