NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DIXIE J., *Appellant,*

*v.*

JOHN S., A.J., *Appellees.*

No. 1 CA-JV 15-0374
FILED 6-16-2016

Appeal from the Superior Court in Yavapai County
No.  V1300SV201580004
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Paul Tutnick, Attorney at Law, Sedona
By Paul Tutnick
*Counsel for Appellee John S.*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

C A T T A N I, Judge:

¶1 Dixie J. ("Mother") appeals from the superior court's ruling terminating her parental rights to her daughter, A.J. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 A.J. was born in July 2012. Mother and A.J.'s father, John S. ("Father"), were no longer in a relationship at that time, and A.J. lived with Mother in Cottonwood for approximately the next year and a half.

¶3 In late 2013, Father petitioned for temporary emergency custody of A.J., citing concerns about substance abuse by Mother and domestic violence against Mother by her then-current boyfriend with A.J. present. In December 2013, the family court granted Father sole legal decision-making and primary physical custody of A.J., with Mother to receive supervised parenting time for four hours per day during the week and for six hours per day every other weekend. At Mother's request, the court specified that her mother ("Maternal Grandmother") was to supervise the visits "at a location agreed upon by the Parties." The final order further required Mother to pay monthly child support.

¶4 Despite the order granting Mother daily parenting time, she only visited A.J. approximately five times in the two years after the December 2013 custody order. She moved to Bullhead City (three or four hours away) in March 2014, and the distance made it more difficult to visit A.J., particularly because she did not have a driver's license or access to a car. Mother's last visit with A.J. was around April 2015, six months before the October 2015 severance hearing.

¶5 Mother testified that Father had denied visits "several times." Father acknowledged denying one visit when Mother made a last-minute request after two months without any contact with A.J. He explained that A.J. suffered negative emotional effects after the inconsistent visits, and she needed time to prepare for Mother's parenting time. Father also refused

Mother's requests for unsupervised visits because they were contrary to the court order.

**¶6** Mother testified that, despite her best efforts, accommodating everyone's work schedules remained the biggest obstacle to consistent visits. Mother noted that Maternal Grandmother worked as a caregiver for an elderly couple during the time available for weekday visits, but Father was unwilling to allow visits because Maternal Grandmother could not provide adequate supervision for the visit while working. Maternal Grandmother spent time with A.J. several hours every other weekend, and Mother could have participated in those regular visits, but she did not do so.

**¶7** Over the two years following the December 2013 custody order, Mother called A.J. only 10 to 12 times, the last time in June 2015. She gave A.J. a few gifts, but she did not pay any child support even though she was gainfully employed. At the October 2015 severance hearing, Mother agreed that she had not had a normal parent–child relationship with A.J. during the preceding 18 months.

**¶8** Father filed a petition to terminate Mother's parental rights on grounds of abandonment, neglect, and chronic substance abuse. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (2), (3).[1] After a contested hearing, the superior court found severance warranted based on abandonment and neglect. The court further found that severance would be in A.J.'s best interests, basing its finding on testimony that Father and his fiancée had a positive and stable relationship with A.J., and that the fiancée wanted to adopt A.J. "as soon as possible" after their planned April 2016 wedding. Mother timely appealed from the severance ruling, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶9** Mother argues that the superior court erred by finding grounds for severance based on abandonment and neglect and by finding severance to be in A.J.'s best interests.

**¶10** The superior court may terminate the parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance, and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8–533(B); *Kent K. v.*

---

[1] Absent material revisions after the relevant date, we cite a statute's current version.

*Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review the superior court's severance ruling for an abuse of discretion, deferring to the court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶11**          Under A.R.S. § 8–533(B)(1), one statutory ground for severance is abandonment, defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8–531(1). Abandonment is measured by objective considerations, based on the parent's conduct, not her subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000). The key criterion is whether the parent, under the unique circumstances of the case, "has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.* at 249–50, ¶¶ 18, 20; *see also* A.R.S. § 8–531(1).

**¶12**          Mother argues that the superior court's abandonment finding was not warranted in light of her efforts to maintain a parental relationship with A.J. by calling, sending gifts, and visiting when she was able to do so. But the evidence shows that Mother made at most minimal efforts to support and communicate with A.J. *See* A.R.S. § 8-531(1). Over the course of approximately two years, Mother visited A.J. only five times, called only 10 or 12 times, sent only a handful of gifts, and provided no child support. By the time of the severance hearing, Mother had not seen A.J. for six months and had not called for four months, and Mother acknowledged that she had not had a normal parent-child relationship with A.J. for over 18 months. Although Mother's relocation to Bullhead City made it difficult to have more contact with A.J., Mother had an obligation to take appropriate actions to maintain that relationship. *See, e.g.*, *Michael J.*, 196 Ariz. at 250, ¶ 22. Moreover, Mother did not seek any modification of the custody order to allow her more or different access to A.J. in light of her different scheduling needs after relocation.

**¶13**        Citing *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), Mother argues that Father unreasonably interfered with her efforts to maintain a relationship with A.J.  In *Calvin B.*, we held that "a parent who has persistently and substantially restricted the other parent's interaction with their child may not prove abandonment based on evidence that the other has had only limited involvement with the child."  *Id.* at 293–94, ¶ 1. In that case, the mother restricted the father's contact to only minutes at a time despite a dissolution decree calling for "liberal visitation," then sought two orders of protection, ignored father's requests for visits, and contacted police to prevent visits; the father meanwhile persistently requested visits, and even sought and received a court order for parenting time, which the mother violated by refusing contact.  *See id.* at 294–95, 297, ¶¶ 2–8, 22–24. Under those circumstances, we held that the mother could not rely on the roadblocks she had created to produce an artificial abandonment despite the father's continued, substantial efforts to communicate with the child. *Id.* at 297, ¶ 21.

**¶14**        Unlike in *Calvin B.*, the record here does not reflect that Father prevented Mother from fostering her relationship with A.J., and instead supports the superior court's conclusion that Mother failed to maintain regular contact or provide any support.  Father refused a supervised visit only once.  Mother moved to a different city (which as a practical matter would have prevented exercising the daily visitation authorized by the custody order), and despite weekly trips back to Cottonwood only arranged a few visits with A.J.   Mother testified that scheduling complications (as opposed to intransigence by Father) were the primary obstacle to consistent visitation, but as noted above, Mother did not seek to modify the custody order to address those issues.  Although Mother claims Father unreasonably refused to allow visits while Maternal Grandmother was working, the court reasonably accepted his explanation that Maternal Grandmother could not adequately supervise the visits while primarily focused on providing in-home care to others.  Moreover, Mother knew Maternal Grandmother did not work weekends (and that Maternal Grandmother spent time with A.J. over the weekends), but Mother nevertheless failed to participate in any weekend visits.  Accordingly, the superior court did not err by finding abandonment as grounds for severance under A.R.S. § 8-533(B)(1) and -531(1).[2]

---

[2]        Because we affirm the court's finding of abandonment, we need not address the alternative ground of neglect.  *See Michael J.*, 196 Ariz. at 251, ¶ 27.

**¶15**      Mother further argues the court erred by concluding that severance was in A.J.'s best interests. The best interests determination assesses whether the child would benefit from severance or whether the child would be harmed by continuing the parental relationship. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19. Adoptability or a prospective adoption is one such benefit that may, depending on the circumstances, support a best interests finding in both public and private severance actions. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4–5, ¶ 16–17 (2016). Ensuring stability and security for the child is "[o]f foremost concern." *Id.* at 4, ¶ 15.

**¶16**      Mother argues that Father failed to show how continuing the status quo would harm A.J., and that Father's fiancée's intent to adopt A.J. was insufficient to show a benefit from severance. The testimony at the severance hearing reflected that Mother's inconsistent contact was a source of instability for A.J. and that A.J. suffered negative emotional reactions after visits with Mother, which supported the superior court's finding that continued contact would be detrimental to A.J.'s wellbeing. Moreover, the evidence supported the court's conclusion that A.J. was adoptable and that there was a reasonable basis to believe that A.J. could be adopted following Father's marriage. As the court noted, A.J. had a positive and stable relationship with Father's fiancée and adoption by the fiancée would ensure that A.J. enjoys a "safe, stable and loving home" in the future. *See id.* at 5, ¶ 17. Accordingly, the superior court did not err by finding severance to be in A.J.'s best interests, and therefore did not err by terminating Mother's parental rights.

**CONCLUSION**

**¶17**      The judgment is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA