NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JUSTIN A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.A., E.A., *Appellees*.

No. 1 CA-JV 20-0029

FILED 8-25-2020

Appeal from the Superior Court in Maricopa County
No. JD532120
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**S W A N N**, Chief Judge:

**¶1**　　　　Justin A. ("Father") appeals the juvenile court's order adjudicating R.A. and E.A. ("the Children") dependent. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　In November 2018, while Father was incarcerated, the Department of Child Safety ("DCS") took temporary custody of the Children.[1] DCS filed a dependency petition alleging that Father had neglected and abandoned the Children because he failed to provide for the Children's basic necessities or maintain a normal parent-child relationship "for an extended period of time."[2]

**¶3**　　　　Shortly thereafter, Father sent a letter to the Children. The Children reacted angrily to Father's attempt to establish contact after "be[ing] out of their lives for so long" and refused to speak to or visit him. R.A. questioned Father's sudden reappearance and ability to "make a good impact" on her life; E.A. stated she "does not know what he looks like." The juvenile court denied Father's request for jail visits and referred the Children for counseling after finding that the Children did not have a meaningful relationship with Father, were scared of him, and did not wish to have contact with him.

---

[1]　　　　"On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 486, ¶ 2 (App. 2015) (citation omitted).

[2]　　　　DCS also alleged that the Children and their eight-year-old half-sister were dependent as to the Children's mother, Danielle E. ("Mother"). Mother did not challenge the September 2019 dependency adjudication and is not a party to this appeal.

¶4        Father continued to write letters to the Children and completed some programs while incarcerated.  Father was released from prison in October 2019.  At the Children's request, the juvenile court entered a no-contact order pending evaluation and input from a mental health professional.  Father did not complete the psychological examination necessary to evaluate whether therapeutic visits were appropriate.

¶5        At a contested dependency hearing in December 2019 and January 2020,[3] DCS presented evidence that Father had an extensive criminal history, including multiple convictions for drug-related offenses, and had been "in and out of incarceration" for fifteen years.  Father did not have regular contact with the Children, did not provide for them financially, and did not have any parent-child relationship before the dependency was initiated.  The Children consistently refused visits and, although Father continued to write them letters, they did not have a parent-child relationship at the time of the hearing.  Additionally, Father had a history of substance abuse but had not submitted any proof that he was participating in substance abuse treatment or testing as requested; nor did he have a stable home.  In light of these circumstances, the DCS case worker opined that Father was not presently able to perform as a minimally adequate parent.

¶6        Father presented evidence that he was compliant with the terms of his probation, had a full-time job, and was residing with his mother.  Father testified that he last had a relationship with the Children in 2009.  Since then, Father had been incarcerated for several lengthy periods, during which time Mother ignored his attempts to contact her and the Children through Facebook and mutual acquaintances.  When he tried to

---

[3]        Arizona law directs a dependency adjudication hearing "be completed within ninety (90) days of service of the dependency petition on the parent."  Ariz. R.P. Juv. Ct. 55(B).  The hearing may be continued beyond that time "only upon a finding of extraordinary circumstances," the factual basis of which "shall be [set forth] in writing."  *Id.*  The record reflects that Father was served with the dependency petition in March 2019.  The juvenile court initially scheduled a dependency adjudication hearing in August, but continued the hearing until October.  The court did not make a finding of extraordinary circumstances on either occasion.  The reasons for the initial delays are unclear and unchallenged, and Father ultimately consented to an additional delay after the guardian ad litem advised he would be unable to attend a hearing scheduled on a religious holiday.  Nonetheless, future challenges to such dilatory conduct would not be unwarranted given the clear directives of Rule 55.

reach out to the Children through their maternal grandparents, the grandparents obtained an order of protection against him. Father testified that he had initiated a family court case in 2008 but did not follow up when the proceedings were interrupted by a period of incarceration. In the last ten years, Father had physically seen the Children only once in early 2015, and had accrued $12,000 in child support arrears. Nonetheless, Father testified he was willing and able to participate in whatever services were necessary to re-establish a relationship with the Children.

¶7        Neither of the Children could remember ever seeing Father in person or receiving any gifts or cards from him. Neither of the Children wanted to have any direct contact with Father or be under his care.

¶8        At the conclusion of the hearing, the juvenile court found that DCS had proven, by a preponderance of the evidence, that Father was unable to parent the Children "due to neglect and abandonment." Specifically, the court found:

> Father has not consistently supported the children since 2008. Father did not obtain family court orders for the children during this time period. . . . [F]ather has been in and out of prison since 2008 and not been routinely involved in the children's lives.

The court adjudicated the Children dependent as to Father and adopted a case plan of family reunification. Father appeals.

## DISCUSSION

¶9        Father argues insufficient evidence supported the juvenile court's finding that the Children were dependent. A finding of dependency requires proof by a preponderance of the evidence. A.R.S. § 8-844(C)(1).[4] "We review an order adjudicating a child dependent for an abuse of discretion, . . . [and] will only disturb a dependency adjudication if no reasonable evidence supports it." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016).

¶10        A "[d]ependent child" is "a child who is adjudicated to be . . . [i]n need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control"; and "[a] child whose home is unfit by reason of . . . neglect . . . by a parent."

---

4        Absent material changes from the relevant date, we cite the current version of rules and statutes.

A.R.S. § 8-201(15)(a)(i), (iii).  A parent is, by definition, unwilling or unable to care for a child he has abandoned.  *See* A.R.S. § 8-201(1) (defining abandonment as "the failure of the parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision").

**¶11**        Father argues that the evidence presented at the adjudication hearing established that his failure to maintain a relationship with the Children was caused by Mother's interference, rather than his lack of effort.  We disagree.

**¶12**        "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct . . . ."  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 18 (2000).  "[W]hen circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary."  *Id.* at 250, ¶ 22 (citation omitted).

**¶13**        Although Father testified that he had attempted to contact the Children informally and had initiated (but later abandoned) a family court case a decade earlier, the preponderance of the evidence established that Father's efforts were minimal, rather than a vigorous assertion of legal rights.  *See id.*; *see also* A.R.S. § 8-201(1) ("Abandoned includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.");  *see also* A.R.S. § 8-531(1).  And we will not second-guess the juvenile court's evaluation on appeal; "[t]he juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings."  *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011).

**¶14**        Father's reliance on *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), is unpersuasive.  The *Calvin B.* court was tasked with evaluating an "unusual case" where one parent "interfered with [the other]'s opportunity and ability to develop a normal parental relationship with their son" over the course of several years before petitioning to terminate the other parent's rights.  *Id.* at 294–95, 297, ¶¶ 2–9, 21.  We held that "[a] parent may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment."  *Id.* at 297, ¶ 21.  But no one has petitioned to terminate Father's rights here.  Moreover, the termination proceedings at issue in *Calvin B.* required clear and convincing evidence of abandonment, rather than the preponderance of evidence necessary to adjudicate a child dependent.  *Compare* A.R.S. § 8-537(B)

(stating the grounds for severance must be proved by clear and convincing evidence), *with* A.R.S. § 8-844(C) (authorizing a dependency adjudication when the allegations are proved by a preponderance of the evidence).

**¶15** Reasonable evidence supports the juvenile court's determination that Father was unwilling to care for the Children, as evidenced by his failure to maintain regular contact or provide financial support for them for a period of years before the dependency was initiated.[5] Reviewing for a preponderance of the evidence, we find no abuse of discretion.

## CONCLUSION

**¶16** The juvenile court's order adjudicating the Children dependent as to Father is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] Because the evidence is sufficient to find Father abandoned the Children long before these proceedings were initiated, we need not and do not address Father's contention that DCS interfered with his attempts to communicate with the Children after the dependency petition was filed.