779 P.2d 1276

**In the Matter of the Appeal in YUMA COUNTY JUVENILE COURT ACTION NUMBER J–87–119.**

**No. 1 CA–JUV 88–039.**

Court of Appeals of Arizona, Division 1, Department D.

June 6, 1989.

Review Denied Oct. 17, 1989.

---

**10.** *Diagnostic and Statistical Manual of Mental* *Disorders* at 225 (3d ed. revised 1987).

David S. Ellsworth, Yuma County Atty. by John K. White, Deputy County Atty., Yuma, for appellee.

Engler, Engler, Weil & Nelson by John N. Nelson, Yuma, for appellant Kenneth Max Vanzandt.

## OPINION

KLEINSCHMIDT, Presiding Judge.

This is an appeal from an order of the superior court terminating the parental rights of the father of a boy who is now twelve years of age. The question on review is whether the trial judge abused his discretion in finding that the father had abandoned the child. We conclude that the trial judge did not abuse his discretion, and we affirm the order of termination.

The facts are as follows. The child's father and mother were married in 1976 in the State of Missouri. The child was born in February 1977. Approximately two months after the child was born, the parents separated and the mother took the child and moved to the home of her parents in Herrin, Illinois. She filed for divorce in Illinois, and a Judgment of Dissolution of Marriage was entered in November 1978. The mother sought no child support because she did not want the father to have any contact with the child.

In late November or early December of 1978, the couple, although they did not remarry, reunited and lived together for several months in Cassville, Missouri. They separated again, and the mother took the child and went to the home of a friend who lived in Rogers, Arkansas. The mother and the child stayed there for a week and then returned to the home of the mother's parents in Herrin, Illinois. They lived there for over two years, until around May of 1981. Thereafter, the mother took the child and moved briefly to Carbondale, Illinois, returning to live with her parents in Herrin sometime in 1981. In 1982, the mother married her second husband. It was during that year that she moved three miles away from Herrin, to Cope, Illinois, where she lived until December of 1984, when she and her husband and the child moved to California. At some time after the wife moved to California, her parents moved to a town fourteen miles from their

former home. Their telephone number was always listed.

The father, in the eight years following his separation from the mother, made only one effort to contact his former wife. Within a week after she left him in early 1979, the father called her parents' home in Herrin, Illinois. He was told that his former wife was not there, that the parents did not know where she was, and that he should not try to contact her.

Sometime in 1980, the mother called the former husband's parents to ask them for a loan. As to her whereabouts, she said only that she was living in Illinois. At the time she called, her former husband was living with his parents, but the two did not talk. Thereafter, there was no contact of any kind until the father received the papers asking him to consent to the adoption of the child by the mother's second husband.

The father explained his lack of contact with his former wife and son as follows:

I did not know how, I did not know where they resided. I didn't want to call and cause trouble with her folks, being told not to call her anymore. I didn't feel it would be the right thing to do to call there.

The trial court found by clear and convincing evidence that the father had abandoned his son. Abandonment will justify termination of the parent-child relationship. A.R.S. § 8–533(B)(1) (Supp.1988). Abandonment is defined as:

[T]he failure of the parent to provide reasonable support and to maintain regular contact with the child, including the providing of normal supervision, when such failure is accompanied by an intention on the part of the parent to permit such condition to continue for an indefinite period in the future. Failure to maintain a normal parental relationship with the child without just cause for a period of six months shall constitute prima facia evidence of abandonment.

A.R.S. § 8–546(A)(1) (Supp.1986).

■ Abandonment must be shown by clear and convincing evidence. *Juvenile Appeal No. JS–5894*, 145 Ariz. 405, 410, 701 P.2d 1213, 1218 (App.1985). Clear and

convincing evidence is evidence that makes the existence of the issue highly probable. *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). Nonsupport alone is not enough to establish abandonment. *Juvenile Appeal No. JS–3594*, 133 Ariz. 582, 586, 653 P.2d 39, 43 (App.1982).

■ Questions of abandonment and intent are questions of fact for resolution by the trial court. *Juvenile Appeal No. 4283*, 133 Ariz. 598, 601, 653 P.2d 55, 58 (App. 1982). Unless there is no reasonable evidence to support the juvenile court's finding of facts, we must accept them. *Juvenile Appeal No. S–1147*, 135 Ariz. 184, 185, 659 P.2d 1329, 1330 (App.1983); *Juvenile Appeal No. JS–3594*, 133 Ariz. at 585, 653 P.2d at 42; *Juvenile Appeal No. J–2255*, 126 Ariz. 144, 146, 613 P.2d 304, 311 (App. 1980).

■ The trial court did not abuse its discretion in finding that the father had abandoned his child. We conclude this in the face of the uncontroverted evidence that the mother severed all ties with her former husband and refused to tell him where she and the child were living. In this case the mother justified her conduct by saying that the father had beaten both her and the child and that she feared him. The father denied this emphatically. There was no need for the trial judge to resolve who was telling the truth on this point because it was not essential to his decision.

We have no desire to encourage, barring real danger to spouses and children, the kind of behavior the mother engaged in here. Indeed, Division Two of this court has found that such conduct rebuts the presumption of abandonment that ensues from a failure to support or remain in contact with a child. In *Juvenile Appeal No. S–1182*, 136 Ariz. 432, 666 P.2d 532 (App.1983), the decision of the trial court terminating the parental relationship between a father and his child was set aside because the whereabouts of the mother and child were unknown to the father for about two years and the mother intentionally wanted to sever any relationship between the father and child. *Id.* at 433, 666

P.2d at 533. The decision in *Juvenile Appeal No. S–1182* does not control the case now before us. From all we can tell from that case, the father had utterly no way of even beginning to try to find the mother and child in the less than two years they were out of touch. While we can envision many situations in which such conduct will conclusively rebut any contention of abandonment, this is not such a case.

Here, the father had an avenue of contact with his child through his former in-laws. He knew that his former wife had once before returned to her parents when she left him. He knew where they lived, and he knew their phone number. While it is true that they had told him not to try and contact his former wife, common sense suggests that even a modicum of persistence on the father's part might have borne fruit. What is more pertinent, common sense suggests that a person in this father's shoes who really intended to maintain a relationship with his son would have done more than this father did to try to find his child.

The former in-laws always knew where their daughter lived. For most of the four years before she moved to California, she was either with them or within a few miles of their home. The father made no effort to contact local authorities in the community where he might reasonably have suspected his former wife and child lived; he sought no counsel from the authorities in his own locale; he hired no legal counsel; he hired no investigator; and although he had previously been to his former in-laws' home, he never went to Illinois to see if he could find his child. He never so much as sought to ask the telephone company if they had a listing for his former wife in the area of Illinois where he might reasonably have believed she was residing.

Even if every allowance is made for lack of sophistication and limited resources, the trial court was not compelled to believe that the father was actually stymied by a single verbal rebuff. The judge could reasonably have found that for eight years the father was content with the situation, including his freedom from the responsibility for supporting his son. The point is not just that if the father had done more he might have made contact with his child. The most salient point is that the father's failure to do anything except make one telephone call is powerful evidence of his intent.

The judgment of the trial court is affirmed.

GRANT, C.J., concurs.

FIDEL, Judge dissenting:

The law should be unequivocal and emphatic in repudiation of the mother's course of conduct in this case. When, as here, one parent deliberately withholds knowledge from the other of her whereabouts with the child, the law should not reward her when she surfaces by severing the parental relationship of the other. To do so is to subjugate the custodial parent's burden to disclose the child's whereabouts to the non-custodial parent's burden to track her down.

The most salutary legal response in cases such as this is a firm presumption of non-abandonment. To deny present termination would do no harm. It would neither effectuate a change in custody nor disrupt the current living circumstances of the child. It would simply provide the child and father a chance, withheld till now, to establish their relationship. If the father were to fail to seize this chance, a second petition would soon enough be warranted and termination only forestalled, not foreclosed.

The effect of the court's ruling is to deny the father such a chance and grant the mother a self-help severance. The court has misallocated the benefits, burdens, and presumptions. I respectfully dissent.