304 P.3d 1115

**CALVIN B., Appellant,**

v.

**BRITTANY B., G.B., Appellees.**

**No. 1 CA–JV 12–0197.**

Court of Appeals of Arizona, Division 1, Department C.

June 20, 2013.

As Modified Oct. 29, 2013.

---

The Wood Law Office by Ronald D. Wood, Dirk Legate, Show Low, Attorneys for Appellant.

Aspey, Watkins & Diesel, P.L.L.C. by Zachary J. Markham, Daniella M. Ferrari, Flagstaff, Attorneys for Appellees.

## OPINION

JOHNSEN, Judge.

¶ 1 We address in this appeal a mother's petition to terminate a father's parental rights to their child based on abandonment. We hold that a parent who has persistently and substantially restricted the other parent's interaction with their child may not prove abandonment based on evidence that the other has had only limited involvement

with the child. Accordingly, we reverse the superior court's judgment of termination.[1]

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Calvin B. and Brittany B. were married in October 2006, and their son was born in December 2007. In February 2008, Brittany petitioned for divorce; the court entered a dissolution decree three months later. The decree adopted the parties' agreement granting Brittany sole legal and physical custody of the child and allowed Calvin "liberal visitation as his schedule allows," to occur at Brittany's residence or in her presence. The decree also provided that Calvin would "not be required to pay child support, but nevertheless shall provide financial assistance to the child as required by [Brittany]."

¶ 3 In July 2009, Calvin filed a *pro se* petition for modification requesting joint custody, arguing that Brittany allowed him to see the child only "maybe twice a month for about twenty minutes." Ten days after receiving Calvin's petition for modification, Brittany filed a petition for an order of protection against Calvin. Her petition alleged that when she was pregnant with their son two years before, Calvin had slammed her against a wall and kicked her. She also alleged that since February 2009, Calvin "[h]as constantly threatened me" and "threatened to strangle [sic] in May of 2009." Following an ex parte hearing, the superior court granted Brittany's petition and entered an order of protection that barred Calvin from any contact with Brittany. The court ordered that Brittany's parents "shall be responsible for the arrangement of the father's parenting time," and that Brittany's mother would supervise Calvin's parenting time.

¶ 4 Brittany responded to Calvin's petition for joint custody the same day she petitioned for the protective order. Her response argued the court should dismiss Calvin's petition because he had not completed a parenting education program as required by the dissolution decree. She also alleged Calvin had substance-abuse problems, had committed domestic violence against her, and had "severe anger control problems." Further, she alleged Calvin had failed to satisfy his obligation under the dissolution decree to hold her harmless from certain debts and had contributed only $600 in support of the child.

¶ 5 In August 2009, Calvin filed a "Plea for expedited hearing for child custody." He said he believed Brittany planned to move out of state with the child, thereby "interrupt[ing] the little time I get to spend with my son." Calvin's filing continued, "I see him once every two weeks for fifteen minutes. This is not enough for me or him."

¶ 6 After a hearing in November 2009, the court ordered Calvin to complete a parenting class and ruled that Brittany was not required to allow him visitation until he had done so. The court modified the original custody order to allow Calvin an overnight visit every other weekend and one weekday evening every two weeks. The order also required Calvin to pay $264 a month in child support and $1,500 to cover half of the costs of a surgery for the child. Thereafter, however, Calvin did not pay any child support or any part of the surgery costs, and he did not complete the parenting class until February 2011. Nevertheless, despite Calvin's failures to pay support and to help fund the surgery, and despite his delay in taking the parenting class, when he asked to see his son, Brittany continued to allow him to visit with the child for 20 to 30 minutes at a time.

¶ 7 In May 2010, Brittany filed a second petition for an order of protection, alleging that Calvin used hard drugs "for quite some time" and had made numerous phone calls to her, "yelling cussing & threatening to strangle me." Her petition asked that the order include herself and her son as protected persons. She filed her petition in justice court, which issued the order she sought. A copy of the order is not in our record, but according to testimony before the superior court some time later, the justice court granted the order over Calvin's objection. The justice

---

1. Our caption is amended pursuant to Administrative Order 2013–0001 to safeguard the identity of the child.

court advised Calvin that he could seek relief from the order in the superior court. Despite the order of protection, for the next several months, Brittany continued to allow Calvin to see their son: Brittany, her current husband and the boy would meet Calvin for 15 to 20 minutes at a time at a fast-food restaurant. Later, Brittany permitted Calvin to visit their son at her mother's home for 15 to 20 minutes at a time.

¶ 8 In about November 2010, however, Brittany ended the visits. Calvin tried to contact Brittany's mother to seek visitation, but she did not relay the messages to Brittany, and eventually blocked Calvin's phone calls. On two occasions, Calvin sent texts to Brittany to ask to see the boy, but Brittany called police both times, causing him to be twice arrested for violating the order of protection.[2]

¶ 9 In March 2011, two months before the second order of protection was to expire, Brittany filed a petition for contempt and to terminate Calvin's parental rights based on abandonment. She alleged Calvin had failed to complete the parenting class and failed to pay child support and the $1,500 for the surgery. Brittany also alleged Calvin had only "limited and sporadic contact" with their son and had "failed to have any meaningful contact with the child" since December 2009. In September 2011, before the court acted on Brittany's petition, Calvin filed a "Request for Temporary Orders" seeking parenting time. Calvin said Brittany had been allowing him parenting time "at [her] whim," but that she had rejected "several overtures" seeking parenting time in the prior 90 days. He asked for a day a week of parenting time, offered to take a drug test and agreed that his parents or grandparents could supervise his parenting time.

¶ 10 In response, Brittany moved to strike Calvin's request for temporary orders, asserting that given her pending petition for termination, any determination of visitation "must await the Court's decision" on her petition for termination. After the superior court told the parties at a status conference in November 2011 that existing visitation

orders remained in effect pending a ruling on the termination petition, Calvin filed a "Petition for Contempt and to Enforce Parenting Time." He asserted he had "repeatedly asked for parenting time" and had agreed to "have it under limited and controlled circumstances," but that Brittany denied him visitation without explanation.

¶ 11 The superior court took evidence on December 19 on the competing motions for contempt. It found that despite the existing visitation order, Calvin "has had no parenting time with the minor child for an extended period of time," and held Brittany in contempt for failing to allow him visitation. The court ordered Calvin could have professionally supervised visits for up to two hours twice a week, with both parents to split the costs of supervision.

¶ 12 During January 2012, Calvin had two supervised visits with his son. On February 9, 2012, the day the severance trial was to begin, the parties agreed to continue the termination proceedings for six months and to allow Calvin to have one supervised visit a week, with Calvin paying the entire cost of the supervised visits. After reviewing Calvin's financial affidavit, the court found him indigent and appointed him counsel but told him the court could not pay visitation fees.

¶ 13 On July 30, 2012, the court held the continued severance trial. Calvin admitted he had not paid any child support since the first of the year. He offered receipts showing that since January, he had supervised visits with his son on June 11 and July 9, 2012, and that each visit cost him $100. He testified he visited his son other times since January but had no documentation for those visits. He also testified he could not afford to pay the $100 per-session fee for other supervised visits. Calvin testified that he had changed jobs once since January but that he was working full time and supporting his fiance, her child, his newborn child with his fiance and he "had to pay other things."

¶ 14 Brittany testified that Calvin had not had any contact with their son besides the visits for which he had receipts, but conceded

2. According to a police report, one of the texts read: "I know I shouldn't be calling you, please don't call the cops. I want to see [the son] it's been so long, I miss him please find a way Britt."

that she had not allowed Calvin to speak to the boy on the phone and also admitted she cancelled two visits in July 2012. Brittany testified Calvin never had consistent contact or a meaningful relationship with the child at any point in the child's life.

¶ 15 The superior court granted Brittany's petition for termination of Calvin's parental rights. In relevant part, the court found:

3. That since [the 2008 dissolution] the father's parenting time has been sporadic and approximately only 10 times per year;

4. That the father has not paid any significant amount towards child support, although it was previously ordered;

5. That the mother filed an order of protection in 2010 and father did not file anything with the Superior Court trying to establish his right to parent;

6. That father did not file anything to attempt to enforce his rights until after the mother filed a Petition to Terminate as the order of protection was set to expire;

\* \* \*

8. That father has not established a strong relationship with his son at any point in the last five years or provided reasonable support or normal supervision;

9. That ... the Court finds that the father has failed to promptly and persistently grasp the opportunities to develop a relationship with his child or assert his legal rights.

¶ 16 We have jurisdiction of Calvin's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 8–235(A) (West 2013), 12–120.21(A)(1) (West 2013) and – 2101(A)(1) (West 2013).[3]

## DISCUSSION

### A. General Principles.

¶ 17 We review an order terminating a parent's relationship with his or her child for an abuse of discretion and will affirm if it is supported by sufficient evidence in the record. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 36, ¶ 12, 243 P.3d 636, 639 (App.

2010). We view the evidence in the light most favorable to sustaining the superior court's ruling. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20, 995 P.2d 682, 686 (2000).

¶ 18 The superior court may terminate a parent-child relationship if it finds one of the statutory grounds by clear and convincing evidence. A.R.S. § 8–537(B) (West 2013); *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, ¶ 7, 110 P.3d 1013, 1015–16 (2005). The court also must find by a preponderance of the evidence that termination would be in the child's best interests. *Kent K.*, 210 Ariz. at 288, ¶ 41, 110 P.3d at 1022 (interpreting A.R.S. § 8–533(B) (West 2013)).

¶ 19 One statutory ground for termination is abandonment. A.R.S. § 8–533(B)(1). Our statute defines "abandonment" as

the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8–531(1) (West 2013).

¶ 20 "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct...." *Michael J.*, 196 Ariz. at 249, ¶ 18, 995 P.2d at 685. When "circumstances prevent the ... father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250, ¶ 22, 995 P.2d at 686 (quotation omitted). "Nonsupport alone is not enough to establish abandonment." *In re Yuma County Juv. Ct. Action No. J–87–119*, 161 Ariz. 537, 539, 779 P.2d 1276, 1278 (App.1989).

### B. The Record Lacks Clear and Convincing Evidence of Abandonment.

¶ 21 At trial, Brittany sought termination of Calvin's parental rights based on

---

3. Absent material revision after the relevant date, we cite a statute's current version.

just one statutory ground—abandonment, pursuant to A.R.S. § 8–533(B)(1). Yet the record shows that for much of the period after the dissolution in 2008, Brittany interfered with Calvin's opportunity and ability to develop a normal parental relationship with their son. A parent may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment. For this reason, we conclude the record in this unusual case lacks evidence sufficient for the court to conclude that Brittany proved by clear and convincing evidence that Calvin abandoned his son.

¶ 22 Contrary to Brittany's allegations, the evidence demonstrated that throughout the child's life, Calvin actively sought more involvement with their son than she would allow. At the time of trial in July 2012, Brittany and Calvin had been divorced for a little more than four years. Their dissolution decree allowed for visitation by agreement. During the first year after the divorce, Calvin had such parenting time as Brittany allowed, but in July 2009 he petitioned for joint custody, complaining that Brittany did not allow him enough time with his son. It was then that Brittany obtained the first order of protection against him, which required that he contact Brittany's parents to arrange to see his son. Thereafter, Calvin sought and obtained an order in November 2009 establishing a fixed amount of parenting time, contingent on his taking a parenting course.

¶ 23 Calvin did not complete the parenting class until February 2011, nor did he pay the child support ordered in November 2009. Nevertheless, he continued to seek visits with his son and saw him when Brittany allowed. Brittany obtained an order of protection from the justice court in May 2010 that barred Calvin from any contact with the boy. Notwithstanding the order of protection, he intermittently asked to see his son, and until November 2010, Brittany allowed him some visits.

¶ 24 Calvin finished his parenting course in February 2011, but Brittany moved to sever his rights the following month. As the court found after a hearing in December 2011, Brittany had violated the parenting-time order then in place by refusing to allow Calvin any contact with their son. In the six months before the July 2012 trial, she refused to allow Calvin to speak to the boy on the phone and canceled two visits. Having herself curtailed Calvin's ability to develop a relationship with his son, Brittany did not prove by clear and convincing evidence that Calvin abandoned the child by failing to provide normal parental supervision.

¶ 25 We do not mean to suggest that Calvin always was diligent in pursuing his parental rights and fulfilling his corresponding parental responsibilities. On this record, no one would suggest he was a salutary parent. He failed to pay child support and inexplicably put off taking the parenting class even though the court had ordered that he could not enforce his visitation rights until he finished the class. Nevertheless, under the circumstances, given the hurdles that Brittany erected to his ability to parent, it is to his credit that he managed as many as ten visits with his son a year, as the superior court found.[4]

¶ 26 In granting the petition for termination, the superior court found Calvin had failed to "file anything with the Superior Court trying to establish his right to parent" after entry of the second order of protection in 2010. But at the time, there was an existing superior court order that granted Calvin parenting time with his son. And as Calvin argues on appeal, after the justice court entered the second order of protection in May 2010, it should have transferred the matter to the superior court pursuant to Rule 4(A)(4) of the Arizona Rules of Protective Order Procedure without any request by Calvin, who was unrepresented at the time. More broadly, we cannot accept the proposition that the court acted properly in granting Brittany's petition to terminate Calvin's parental rights based on abandonment because he did not take legal measures to reduce the barriers Brittany had erected to his ability to parent.

---

4. Brittany argues that Calvin failed to pay child support, but a claim of abandonment may not be proved on nonsupport alone. *J–87–119,* 161 Ariz. at 539, 779 P.2d at 1278; *In re Pima County Severance Action S–1607,* 147 Ariz. 237, 239, 709 P.2d 871, 873 (1985).

¶ 27 Citing *In re Maricopa County Juvenile Action No. JS–501568*, 177 Ariz. 571, 869 P.2d 1224 (App.1994), Brittany argues that a court order precluding contact does not shield a parent from a finding of abandonment. At issue in that case was an order that conditioned visitation on the parent's compliance with a drug-treatment program. *Id.* at 574, 869 P.2d at 1227. Our decision in that case was premised on the parent's prior failure to seek visitation with the child and the absence of any effort by the parent to comply with the drug program after the order went into place. *Id.* at 578, 869 P.2d at 1231. Here, by contrast, Calvin pursued visitation (to the point of being arrested for texting Brittany to arrange visits) in spite of the orders of protection.

¶ 28 The superior court also found that Calvin "did not file anything to attempt to enforce his rights until after the mother filed a Petition to Terminate as the order of protection was set to expire." That finding disregards Calvin's "plea" for more parenting time in August 2009, when he feared that Brittany was about to leave Arizona with the child. Moreover, Brittany herself acknowledged that she granted Calvin's requests for visitation even while the protective order was in place, and Calvin completed the parenting class in February 2011.

¶ 29 The superior court cited *In re Pima County Juvenile Severance Action No. S–114487*, 179 Ariz. 86, 876 P.2d 1121 (1994), but the father in that case did nothing to establish a relationship with the child until he was served with the mother's petition for termination. By contrast to that father, Calvin "vigorously assert[ed] his legal rights" to see his son. *See Michael J.*, 196 Ariz. at 250, ¶ 22, 995 P.2d at 686. And unlike the father in *S–1607*, who filed a petition for visitation but then took no further legal action, 147 Ariz. at 238–39, 709 P.2d at 872–73, after the second order of protection expired, Calvin filed a motion for more parenting time and successfully petitioned the court to hold Brittany in contempt for not allowing him the visitation granted by prior order. Unlike the

father in *S–114487*, Calvin has consistently "done something" to assert his right to have contact with his son.

¶ 30 Brittany argues that pursuant to A.R.S. § 8–531(1), she established that Calvin failed without just cause to maintain a normal parental relationship with the boy for six months. To the extent Brittany refers to the six-month period just prior to the trial in July 2012, clear and convincing evidence does not support her contention. Calvin testified without contradiction that he did not visit the child more frequently during the six months prior to trial because he could not afford the $100 fee charged by the professional supervisor. The superior court by that time already had found Calvin indigent; Brittany did not show by clear and convincing evidence that given Calvin's financial situation, he could have afforded additional visits at $100 apiece. Moreover, as noted, Brittany canceled two visits Calvin scheduled during that time and would not allow him telephone contact with the boy.

¶ 31 Our decision reversing the superior court's order of termination does not finally resolve the parties' disputes concerning Calvin's relationship with the child.[5] Six months prior to trial, Brittany filed an amended petition for termination that alleged Calvin had "neglected or willfully abused a child" and was "unable to discharge parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol," pursuant to A.R.S. § 8–533(B)(2) and (3). The status of the amended petition is not clear from the record, but the additional grounds for termination alleged in the amended petition were not before the court at trial. This decision does not preclude Brittany from pursuing termination of Calvin's parental rights on either of the grounds alleged in her amended petition, about which we express no opinion.

¶ 32 More generally, on this record, unless and until Calvin's parental rights are severed or the existing visitation order is modified, he must be allowed visitation with his son. *See*

---

5. Calvin does not take issue on appeal with the superior court's finding that termination of his parental rights would be in the best interests of

his child. Our reversal of the severance order, however, also vacates that finding.

A.R.S. § 25–403.01(D) (West 2013) (parent entitled to reasonable parenting time "to ensure that the minor child has substantial, frequent, meaningful and continuing contact with the parent" so long as court does not find it would "endanger the child's physical, mental, moral or emotional health"). Calvin does not suggest on appeal that his visits should be unsupervised, yet our record contains no indication that he can afford frequent visits at the rate charged by the professional firm the superior court designated to supervise those visits. On remand, the superior court may consider any appropriate alternative affordable means of providing supervision for Calvin's visits.[6]

## CONCLUSION

¶ 33 For the foregoing reasons, we reverse the order terminating Calvin's parental rights on the ground of abandonment and remand for proceedings consistent with this decision.

CONCURRING: PETER B. SWANN, Presiding Judge and RANDALL M. HOWE, Judge.

---

6. We note that other courts addressing this issue have found it appropriate to allow supervision by responsible but nonprofessional adults, or to require that a parent visit the child in a public place, such as a park or child-friendly dining or recreational establishment.