NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JENNIFER B., *Appellant*,

*v.*

JESSE E., J.E., *Appellees*.

No. 1 CA-JV 21-0011

FILED 9-9-2021

Appeal from the Superior Court in Maricopa County
No. JS20446
The Honorable Virginia L. Richter, Judge *Pro Tempore* (Retired)

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

---

**H O W E**, Judge:

¶1        Jennifer B. ("Mother") appeals the juvenile court's order terminating her parental rights to J.E. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother gave birth to J.E. in August 2014. When J.E. was eight months old, Jesse E. ("Father") petitioned for paternity, and the court found that he was J.E.'s father. The court also granted Father sole legal decision-making authority but ordered the parents to share parenting time.

¶3        In December 2017, Mother's adult brother inappropriately held J.E. down on a bed and licked her stomach while in Mother's care. Father sought an order of protection against Mother's brother and petitioned to modify parenting time. Mother and Father agreed that Father would become J.E.'s primary residential parent and continue to have sole legal decision-making authority. According to the agreement, Mother's parenting time would not begin until she had a working phone, and the parenting time would be subject to all existing child support orders, including the order of protection against Mother's brother. Father also contacted the Department of Child Services to investigate Mother's failure to protect J.E. The Department could not finish the investigation, however, because it could not find Mother.

¶4        Two years later, Father petitioned to terminate Mother's parental rights, asserting that she had abandoned J.E. by having no contact with her since December 22, 2017, and that Father's wife wanted to adopt J.E. The court appointed a guardian ad litem for J.E. Initially, Mother could not be served with the petition because she could not be located, but Father eventually found her through the mobile application "Hangout." During the pendency of the termination action, Mother contacted J.E. twice, but in both instances J.E. refused to communicate with her.

¶5            The court held a contested termination hearing in October 2020. The parties agreed to forego testimony and to have the court determine the matter on the information in the petition, Father's disclosure, and attorney avowals. Father argued that Mother had abandoned J.E. by having no contact with her during 2018, 2019, and the majority of 2020, and by providing no financial support. He also argued that termination was in J.E.'s best interests because she did not want a relationship with Mother and had developed a parent-child relationship with his wife, who wanted to adopt J.E.

¶6            J.E.'s guardian ad litem argued that Father proved by clear and convincing evidence that Mother had abandoned the child by showing that Mother had not participated in the child's life for over two years. He further argued that the preponderance of the evidence showed a benefit to the termination of the parent-child relationship because J.E. could be adopted by Father's wife and a detriment to continuing the parent-child relationship with Mother because J.E. would be at risk of abuse or neglect in Mother's care.

¶7            Mother argued that although she did not seek new orders or enforce her visitation rights in court, Father prohibited her access to J.E. by unfriending her on Facebook and ignoring her e-mails and phone calls. She also argued that the termination was not in J.E.'s best interests.

¶8            The court found that Father proved the grounds of abandonment. The court found that Mother had failed to "maintain a normal parental relationship" with J.E. by not contacting her since December of 2017, not providing her any financial support, not communicating with her, and not giving her any cards, letters, or gifts despite having a court order that provided her with parenting time. The court further found that the preponderance of the evidence showed that termination was in J.E.'s best interest because it allowed her to be adopted by Father's wife. Mother timely appeals.

## DISCUSSION

¶9            Mother argues that the juvenile court erred in terminating her parental relationship with J.E. and finding that termination was in J.E.'s best interests. We review a juvenile court's termination order for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). We will affirm an order terminating parental rights so long as reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009).

¶10         To terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8–533 has been proved and must find by a preponderance of the evidence that termination is in the child's best interests. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002).

¶11         The juvenile court may terminate parental rights when a "parent has abandoned the child." A.R.S. § 8–533(B)(1). "Abandonment" means

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8–531(1). A parent's conduct, not a parent's subjective intent, determines abandonment. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 18 (2000). When traditional means of bonding with a child are unavailable, a parent must act persistently to establish or maintain the relationship and must vigorously assert her legal rights "at the first and every opportunity." *Id.* at 251 ¶ 25.

¶12         Reasonable evidence supports termination of Mother's parental rights based on abandonment. Mother had no contact with J.E. from December of 2017 until September of 2020, a month before the severance hearing. Mother provided no record of e-mails to Father, phone calls to Father, or evidence of letters, gifts, or cards that she sent to J.E. The court did not err in finding that Father had proved by clear and convincing evidence that Mother had abandoned J.E.

¶13         Mother nonetheless argues that in its termination order, the juvenile court failed to set forth the standard of proof that it used to find abandonment. Appellate courts presume, however, that the juvenile court knows the law and applies the correct standard. *See Hart v. Hart*, 220 Ariz. 183, 188 ¶ 18 (App. 2009). The presumption may be rebutted only by record

evidence. *Id.*; *see also Brewer v. Peterson*, 9 Ariz. App. 455, 458 (App. 1969) ("The controlling law, as we see it, is that an appellate court must assume that the [juvenile] court did no wrong, in the absence of a showing to the contrary."). The record does not indicate that the court applied an incorrect standard and Mother has therefore failed to rebut the presumption that the court applied a clear and convincing standard in finding that Father proved the grounds for abandonment. *See Hart*, 220 Ariz. at 188 ¶ 18.

¶14 Mother next argues that reasonable evidence does not support the court's finding of abandonment. In particular, she argues that the court erred in finding that she had no contact with J.E. since December 2017 or that she had not communicated with J.E. or provided letters, cards, or gifts. She claims that Father's disclosure demonstrated that she had telephone contact with J.E. twice in September 2020. A prima facie case of abandonment, however, requires only a showing of a lack of contact, including letters, cards, or gifts, for a period of six months. A.R.S. § 8–533(B)(1). While Mother called J.E. twice in September 2020, she provides no other evidence of contact with J.E. for the two and a half years leading up to the contested hearing and therefore has not rebutted the prima facie grounds of abandonment. *See* A.R.S. § 8–533(B)(1).

¶15 Mother further claims that Father's statement that J.E. did not want to talk to her showed that she had contacted J.E. more than just in September 2020. But on appeal, courts do not reweigh the evidence, direct or inferential, presented to the juvenile court, *see Clark v. Kreamer*, 243 Ariz. 272, 276 ¶ 14 (App. 2017), and we refuse to do so here. Mother's argument that reasonable evidence does not support the juvenile court's conclusion is therefore unavailing.

¶16 Relying on *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013), Mother also argues that Father inappropriately impeded her ability to have a parent-child relationship with J.E. because he unfriended her on Facebook and ignored her phone calls and messages. 232 Ariz. 292 (App. 2013). "A parent may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment." *Id.* at 297 ¶ 21. In *Calvin B.*, the father attempted to exercise his parental rights by contacting the mother's parents, filing various pleadings in the family court, completing a required parenting course, and texting the mother multiple times. *Id.* at 294–95 ¶¶ 3, 5–6, 8. This court found that the father had "actively sought more involvement" with his son than the mother would allow. *Id.* at 297 ¶ 22. Here, however, Mother concedes that she has not attempted to exercise her parental rights through available court proceedings and provided no evidence that she ever called or e-mailed J.E.

The record does not support Mother's argument that Father inappropriately restricted her from contacting J.E.

**¶17** For her last argument, Mother claims that termination of her parental rights was not in J.E.'s best interests. Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). In determining whether the child will benefit from termination, relevant factors are whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016).

**¶18** Reasonable evidence supports the juvenile court's finding that termination of Mother's parental rights was in J.E.'s best interests. Mother has had virtually no contact with J.E. for more than two years and has provided no non-contact support in the form of letters, gifts, cards, or financial support throughout that period. Conversely, J.E. has formed a bond with Father's wife that is akin to a parent-child relationship. Termination would allow Father's wife to adopt J.E., providing stable and permanent care for J.E. Substantial evidence therefore supports the juvenile court's conclusion that termination of Mother's parental rights would benefit J.E. Mother's argument to the contrary only asks this court to reweigh the evidence, which we will not do. *See Alma S.*, 245 Ariz. at 151–52 ¶¶ 18–19.

## CONCLUSION

**¶19** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA