NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.C.

No. 1 CA-JV 23-0134
FILED 01-18-2024

---

Appeal from the Superior Court in Maricopa County
No. JS520308
The Honorable Keelan J. Bodow, Judge, *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Stuart & Blackwell PLLC, Chandler
By Cory A. Stuart
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge James B. Morse Jr., and Judge Cynthia J. Bailey joined.

_____

**F U R U Y A**, Judge:

¶1            Kara C. ("Mother") appeals the juvenile court's order granting Tyler C.'s ("Father's") petition to terminate her parental rights as to their minor child, L.C. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2            L.C. was born in 2012 in Indiana. Father was only minimally involved with L.C. for the first few years of L.C.'s life, during part of which Father was attending college in Arizona. He did not provide any child support for L.C. until the Indiana court established paternity and ordered child support in 2016.

¶3            In October 2016, Indiana Department of Child Services responded to an allegation that Mother neglected L.C. after alleged domestic violence incidents between Mother, her husband at the time J. Horner, and Horner's mother. In January 2017, an Indiana court granted Father emergency custody of L.C. The Indiana Department of Child Services put Mother on a program of informal adjustment, which she did not complete.

¶4            In July 2017, Mother and Father mediated a parenting agreement. Father retained sole legal custody and primary physical custody of L.C. and Mother was entitled to unsupervised visitation during breaks in the school year. However, Horner was not to be present during Mother's visitation. Mother was also entitled to three weekly telephone calls with L.C., which Father was to help coordinate.

¶5            Father claimed Mother rarely sought to exercise her phone and in-person visitation, and Mother contended Father prevented her from doing so. Father testified Mother was angry and aggressive in the phone calls with L.C. The last time she saw L.C. was at an in-person visit in July 2018, and the last time she spoke with L.C. was by phone in January 2019. According to Father's testimony at the termination hearing, L.C. disclosed that Horner had been present at his July 2018 visitation with Mother, in

violation of the mediated agreement. Mother denied Horner was present at the July 2018 visit, claiming L.C. mistook her brother for Horner. Mother also claimed Father prevented her from calling L.C. at all after January 2019 and he threatened to have her "arrested for harassment."

¶6            In October 2018, Father filed in Arizona to modify the parenting plan. In June 2019, the Indiana circuit court issued an order declaring Arizona had jurisdiction over the case going forward. In July 2019, the Arizona juvenile court modified the parenting plan, permitting Mother supervised parenting time in Arizona, suspending the telephonic visitation, and imposing child support of $235 per month on Mother. The order required Mother to work through L.C.'s therapist if she desired to resume telephone calls. Mother provided no testimony that she attempted to work with L.C.'s therapist to resume calls and Father testified that, to his knowledge, Mother never did so.

¶7            Father testified that since July 2019, Mother never contacted him to exercise her visitation rights or to ask about L.C. He presented an email from her, also from July 2019, stating she was "willing to sign over [her] full rights" so Father's wife could adopt L.C., although Mother denies sending that email and believes Horner may have sent it instead. Father further testified Mother never paid child support. He also received a card and a letter in the mail and a virtual card from Mother for L.C. In January 2022, Mother emailed Father to inform him she was back in the military and could add L.C. to her insurance.

¶8            Father filed a petition to terminate Mother's parental rights in February 2022 on abandonment grounds pursuant to Arizona Revised Statutes ("A.R.S.") § 8-533(B)(1). The court conducted trial and, in June 2023, terminated Mother's parental rights on the abandonment grounds. It found that she had abandoned L.C. for a period of at least six months, that Father did not cause the abandonment, and that termination was in L.C.'s best interests because L.C. was adoptable and continuing a relationship with Mother would be detrimental to L.C.

¶9            Mother timely appealed and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶10           Our review requires that we "evaluate all the statutory elements found by the juvenile court." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 26 (2023). To terminate parental rights, the juvenile court

must "find by clear and convincing evidence that a statutory ground for termination exists" under A.R.S. § 8-533(B), and then "determine by a preponderance of the evidence that severance is in the child's best interests." *Id. at* 477 ¶ 20 (citations omitted). In reviewing the termination of parental rights, we accept the court's factual findings "if reasonable evidence and inferences support them" and will affirm the court's legal conclusions "unless they are clearly erroneous." *Id.* at 478–79 ¶¶ 30–31 (citations omitted).

**¶11** A parent may petition to terminate the parental rights of another parent who has abandoned their child in common. A.R.S. § 8-533(A), (B)(1). The petitioning parent must prove the other parent failed to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). A parent's failure to maintain a "normal parental relationship with the child without just cause" for six months creates a rebuttable presumption of abandonment. *Id.* The non-petitioning parent may rebut that presumption by showing just cause, including that the other parent "persistently and substantially restricted [her] interaction with their child." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 293 ¶ 1 (App. 2013). However, a parent must act persistently to pursue the parent-child relationship beyond merely "minimal efforts," and a court evaluates the parent's conduct, not her subjective intent. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50 ¶¶ 18, 22 (2000).

**¶12** Citing *Calvin B.*, Mother contends the juvenile court "may not prove abandonment based on evidence that [Mother] has had only limited involvement" with L.C. because Father interfered with her relationship with L.C. 232 Ariz. at 293 ¶ 1. But the juvenile court found "Father's actions do not rise to the level of interference required to establish a defense to abandonment" and "Mother made an insufficient showing that she actively sought more involvement than the other parent would allow." Reasonable evidence supports these findings.

**¶13** In *Calvin B.*, we held the record "lack[ed] evidence sufficient" to prove abandonment because the father in that case had "actively sought more involvement with [the parties'] son than [the mother] would allow" — including up to ten visits a year — despite the mother's strong opposition, such as filing multiple orders of protection against the father. *Id.* at 297–98 ¶¶ 21–27. Here, by contrast, Father testified Mother never contacted him or L.C.'s therapist to set up visitation after July 2019, and Mother did not submit any documentation to refute that testimony. And Father waited until February 2022 to petition to terminate her rights, a substantially longer

period than the six months necessary to establish a rebuttable presumption of abandonment. *See* A.R.S. § 8-531(1).

**¶14** Father conceded Mother mailed a card and a letter and sent one virtual card to L.C. since July 2018, though Mother testified she sent more letters. She also provided text messages and emails showing conflict between the parents as to her visitation. Mother further argues she did not always have correct contact information for Father, or that he blocked her, but she was able to email him in January 2022 about adding L.C. to her insurance. Moreover, she did not present evidence of any effort to enforce her parental rights. Nor has she paid any child support, resulting in over $10,000 in arrears. Though there may be conflict in the evidence, "[w]e will not reweigh the evidence." *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). On this record, we conclude there is reasonable evidence to support the juvenile court's findings that Father's actions did not rise to the level of interference required to establish a defense to abandonment and Mother's actions were insufficient to rebut the presumption of abandonment.

**¶15** We further conclude there is reasonable evidence supporting the court's termination based on abandonment. Per Father's testimony, Mother had not attempted to set up any visits or initiated any contact with L.C. since 2019, and we will not reweigh that evidence. *Id.* Therefore, the court did not err in finding Mother abandoned L.C. without just cause.

**¶16** Mother did not contest the court's finding that termination of her parental rights was in L.C.'s best interests. She has therefore waived the argument. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234 ¶ 14 n.6 (App. 2011) (holding failure to develop argument on appeal constitutes waiver of that argument). Nevertheless, there is reasonable evidence to affirm the court's best-interests finding. Mother testified Father's wife has taken good care of L.C. and intends to adopt L.C. Because there is reasonable evidence L.C. is adoptable and his needs are being met, we find no error in the court's best-interests finding. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 579 ¶ 10 (App. 2017) (holding that a child being adoptable is sufficient to find termination of parental rights is in the child's best interests).

**¶17** Accordingly, the court did not err in terminating Mother's parental rights as to L.C.

## CONCLUSION

**¶18** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: TM