NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.C.

No. 1 CA-JV 24-0007

FILED 07-30-2024

---

Appeal from the Superior Court in Maricopa County
No. JS520688
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Troy C.*

Barreda Law PLLC, Gilbert
By Bonnie Platter
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

---

**F U R U Y A**, Judge:

¶1        Troy C. ("Father") appeals the juvenile court's order granting Alexis P.'s ("Mother") petition to terminate his parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Father and Mother have a minor child in common, C.C., born in 2012. Father was active in C.C.'s life from the time he was born through his and Mother's divorce in 2013. Around the time of the divorce, Mother met and began dating C.C.'s now-stepfather. Stepfather has been in C.C.'s life since he was six months old. When Father enlisted in the military in 2014, he agreed to grant Mother sole legal decision-making authority and sole physical custody at the Army's urging. Father left the military shortly thereafter but has not been a regular presence in C.C.'s life, with his visits and contact becoming less frequent over time.

¶3        Father filed three petitions to modify parenting time but did not show up to any of the scheduled mediations. The first was in July 2016, when Father did not appear because he was not "picking up the mail" at his residence. The next petition came in 2020, after about six months of not contacting Mother or C.C. Father provided no explanation for his absence. In 2023, Father filed yet another petition and once again failed to appear at mediation, this time because his counsel told him not to attend.

¶4        Later in 2023, Mother petitioned to terminate father's parental rights on abandonment grounds. The court held two evidentiary hearings where it heard from the parties and their witnesses. In January 2024, the court granted Mother's petition, terminating Father's parental rights after finding Father abandoned C.C. and termination was in C.C.'s best interests.

¶5        We have jurisdiction over Father's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

**¶6** On appeal, Father asserts the court abused its discretion in finding (1) Father abandoned C.C. and (2) termination was in C.C.'s best interests.

**¶7** When reviewing the court's order terminating parental rights, we are directed to "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 29 (2023) (internal quotation omitted). In so doing, we engage in a two-part analysis. *Id.* at ¶ 30. First, we review the court's factual findings and accept them if they are supported by reasonable evidence and inferences. *Id.* And "we do not reweigh evidence because the court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 582 ¶ 23 (2021) (internal quotation omitted).

**¶8** Second, we examine the court's legal conclusions as to whether the statutory ground for termination—in this case abandonment—was established by clear and convincing evidence and will affirm these conclusions unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79 ¶ 31. When a party challenges whether a conclusion is supported by clear and convincing evidence, we do not disturb the court's determination unless we determine "as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Id.* at 479 ¶ 31.

**I.     The Juvenile Court Did Not Err in Finding Father Abandoned C.C.**

**¶9** Abandonment of one's child constitutes legal grounds to terminate a parent's parental rights to the child so abandoned. A.R.S. § 8-533(B)(1). "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." A.R.S. § 8-531(1). To establish the abandonment ground, the court must "consider whether a parent has (1) provided reasonable support to the children, (2) maintained regular contact with them, and (3) provided normal supervision." *Steven M. v. Dep't of Child Safety*, 254 Ariz. 426, 430 ¶ 12 (App. 2023). A parent's conduct determines abandonment, not their subjective intent. *Id.*

**¶10** Here, the court properly found Father abandoned C.C. The court found Father had failed to maintain contact with C.C. for "a period that significantly exceed[ed] six months." It further found Father did not

support C.C. financially, did not maintain regular contact with him, and did not provide normal supervision. The record supports these findings.

¶11 Over multiple stints, Father would go more than six months without seeing or contacting C.C. Father agreed to give Mother sole legal decision-making authority and parenting time upon enlisting in the military. However, Father did not resume regular parenting time with C.C., nor did he seek to reestablish custody when he left the military only a few months later. By the time of these proceedings, Father had not had physical contact with C.C. since 2020. Between 2014 and 2016, he paid no child support, did not provide for C.C.'s medical, dental, or vision insurance as he had agreed to do in the parties' dissolution decree. For a limited period in 2019, Father made only eight child support payments, and has not made any further payments since then. Nor has he sent C.C. cards, gifts, or letters. The evidence is sufficient, and the court did not err in finding Mother successfully established Father's abandonment.

¶12 Father relies on *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013) to argue Mother obstructed his efforts to be present in C.C.'s life. In *Calvin B.*, a mother withheld her child from the father in violation of the parenting time orders, even after being held in contempt for doing so. *Id.* at 295 ¶ 11. The court found the father overcame the hurdles the mother put in place to prevent parenting time. *Id.* at 297 ¶ 25. Here, putting aside issues of conflicting evidence that we leave to the juvenile court to resolve, *Calvin B.* requires the obstructed parent to exert effort to overcome the obstacles placed in their way. Father's efforts in this case consist of filing court petitions, with which he failed to follow through. Indeed, Father did not appear for multiple mediations on petitions he filed. Such abortive and anemic efforts fall far short of the persistence and vigorous assertion of legal rights required of parents to excuse their non-contact. Thus, *Calvin B.* does not apply.

## II. The Juvenile Court Did Not Err in Finding Termination Was in C.C.'s Best Interests.

¶13 Father argues the court erred in finding termination was in C.C.'s best interests. "Termination of parental rights is in a child's best interests if the child will benefit from termination or will be harmed if the relationship continues." *Steven M.*, 254 Ariz. at 292 ¶ 15 (citation omitted).

¶14 Though Father asserts the court erred by allegedly ignoring testimony offered by him and his girlfriend, he has provided no basis to conclude that the court did so other than the bare fact that the issue was

resolved against him. Rather, it appears on this record that the court decided conflicting evidence in favor of termination. The court found C.C. was bonded to stepfather and wished to be adopted. Conversely, based on testimony from Mother and avowals from C.C.'s own attorney, the court found C.C. was opposed to being forced to reconnect with Father. Thus, sufficient evidence supports these findings. And it is not for us to second-guess the court's weighing of the evidence. *Jessie D.*, 251 Ariz. at 582 ¶ 23. Accordingly, the court properly determined termination to be in C.C.'s best interests.

## CONCLUSION

¶15        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV