NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.C.

No. 1 CA-JV 25-0136

FILED 02-04-2026

---

Appeal from the Superior Court in Maricopa County
No. JS521069
The Honorable Suzanne E. Cohen, Judge

**VACATED AND REMANDED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Father Kurt C.*

Shelby R.
*Pro Per Appellee Mother*

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellee Child K.C.*

---

## MEMORANDUM DECISION

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Vice Chief Judge David D. Weinzweig joined.

---

**F A B I A N**, Judge:

**¶1** Kurt C. ("Father") appeals the termination of his parental rights to K.C., arguing the record does not support a finding of abandonment or that termination was in the best interests of K.C. Reasonable evidence supports the court's finding of abandonment. However, the juvenile court, in its best-interests determination, relied in large part on speculative evidence of a prospective adoption in the event of Mother's death. This was improper under *Maricopa County Juvenile Action No. JS-500274*, 167 Ariz. 1 (1990). Therefore, the juvenile court's order is vacated and remanded for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

**¶2** In 2012, Shelby R. ("Mother") and Father had one child together, K.C. After living together for two years, the parties separated and Mother filed for parenting time and child support. Father was awarded parenting time every weekend and ordered to pay child support.

**¶3** In October 2017, Mother obtained a one-year order of protection against Father for herself and K.C. based on alleged physical abuse, which Father contested. Because of the order of protection, Father stopped exercising parenting time.

**¶4** In June 2019, Mother moved and did not provide Father with her new address. Father moved out of Arizona in 2021 but did not tell Mother.

**¶5** Although the parties disagreed as to the exact year, in either 2023 or 2024, Mother texted Father after K.C. asked to speak to his Father on K.C.'s birthday. Father then spoke to K.C. on his birthday. Otherwise, Father did not speak or physically interact with K.C. after October 2017, even though Mother testified that her email address and telephone number remained the same.

**¶6**         In March 2025, Mother petitioned to terminate Father's parental rights, alleging abandonment and abuse. A termination adjudication hearing was held on August 27, 2025.

**¶7**         Mother testified K.C. wanted Father's parental rights terminated. K.C.'s attorney confirmed K.C. was "worried that [K.C.'s] father's going to disrupt how well [K.C.'s] doing." According to Mother, K.C. was well-adjusted to the community and had family in town. K.C. had also developed a close relationship with K.C.'s maternal uncle and saw him as a father figure. Based on that close relationship, Mother testified she would like maternal uncle to take custody of K.C. in the event something happened to her. Maternal uncle did not testify.

**¶8**         Father testified that he emailed Mother and tried to call her once he believed the order of protection expired. He also testified that Mother reached out to facilitate contact only once in 2024 and thereafter threatened to block him if he contacted her again. Paternal grandmother testified she left voicemails and texted Mother over the years. Father provided no phone records or other documentary evidence showing his phone calls.

**¶9**         Father, paternal grandmother, and Father's wife also testified Father tried to modify custody many times, each time filing a petition for modification, but he could not serve Mother because her address was unknown. The court, however, took judicial notice that there was no record in the court docket of any such petitions.

**¶10**         On September 3, 2025, the court found clear and convincing evidence of abandonment (but not of abuse) because "[F]ather did nothing to see [K.C.] after he moved in 2021" and "Mother's actions do not rise to the level of interference required to establish a defense to abandonment." The court also found that termination of Father's parental rights was in K.C.'s best interests. Father timely appealed. This Court has jurisdiction pursuant to Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶11**         Father argues the record does not support the court's determination that he abandoned K.C. and that termination was in the best interests of K.C. A court may terminate parental rights if: (1) any ground for termination under A.R.S. § 8-533 is proven by clear and convincing evidence and (2) a preponderance of evidence supports termination would be in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279 (2005). The

best-interests finding must rely on more than speculative evidence. *See JS-500274*, 167 Ariz. at 7. Under A.R.S. § 8-538(A), "[e]very order of the court terminating the parent-child relationship . . . shall be in writing and shall recite the findings on which the order is based."

**¶12** In reviewing a termination order, this Court "review[s] the factual findings made by the juvenile court, and its factual findings will be accepted 'if reasonable evidence and inferences support them.'" *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 30 (2023) (quoting *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580 ¶ 10 (2021)). This Court will not reweigh reasonable evidence already considered by the juvenile court because "the juvenile court is in the best position to weigh evidence and assess witness credibility." *Id.* at 478 ¶ 30 (quoting *Jessie D.*, 251 Ariz. at 580 ¶ 10). The juvenile court's legal conclusions "will be affirmed unless they are clearly erroneous." *Brionna J.*, 255 Ariz. at 479 ¶ 31.

## I. Reasonable Evidence Supports the Court's Finding of Abandonment.

**¶13** Abandonment is:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

**¶14** Father argues there is not clear and convincing evidence that he abandoned K.C. Specifically, he claims he "made objective—yet unsuccessful efforts" to reestablish parenting time after Mother's order of protection expired, including: (1) attempts to modify parenting time, (2) child support payments, and (3) contact with K.C. when Mother permitted.

**¶15** Reasonable evidence supports the court's finding that Father abandoned K.C., including that Father: (1) had not seen K.C. since 2017, (2) did not reach out to Mother after the order expired, (3) did not petition to modify parenting time, (4) moved out of Arizona without informing

Mother or K.C., (5) was $10,000 in arrears for child support, (6) sent no cards or other form of communication, (7) disappeared from K.C.'s life, and (8) had no relationship with K.C. Father did not see K.C. for a period far beyond six months, which constitutes prima facie evidence of abandonment. *See* A.R.S. § 8-531(1).

**¶16** Father argues the record shows he tried to modify his parenting time but failed because he did not know Mother's address. However, the court docket did not show that Father had filed any "petitions to modify," the testimonies in support of Father's claims were inconsistent, and Father's alleged inability to serve Mother would not have precluded him from filing the petitions in the first place. The superior court did not believe Father and this Court will not second guess its assessment of credibility. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369 ¶ 16 (App. 2018).

**¶17** Next, Father argues he did not abandon K.C. because he made weekly child support payments and although in arrears, he was paying $376.00 a month in child support at the time of the hearing. In interpreting the definition of abandonment under A.R.S. § 8-531(1), the Arizona Supreme Court has found:

> Although § 8-531(1) does not expressly define "normal parental relationship," the plain meaning of "normal parental relationship" is informed by the first two sentences of the statute. Reading § 8-531(1) as a whole, "abandonment" signifies the "[f]ailure to maintain a normal parental relationship." Because "abandonment" means "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision," it logically follows that a "normal parental relationship" exists when a parent provides the support and contact with the child that a parent who abandoned the child has failed to offer.

*In re B.W.*, ___ Ariz. ___, ___ ¶ 22, 572 P.3d 88, 96 (2025). Thus, Father's payment of some child support, in and of itself, was insufficient to show that he did not abandon K.C.

**¶18**         In an attempt to rebut the court's finding of abandonment, *see Calvin B. v. Brittany B.*, 232 Ariz. 292, 293 ¶ 1 (App. 2013), Father argues "Mother actively hindered [his] and Paternal Grandmother's ability to have contact with K.C. by threatening to block [him], not responding to [his] or Paternal Grandmother's efforts to have contact with K.C., and having her mailing address and not her physical address available publicly." It is true a parent may not wrongfully restrict the other parent's access to a child and then rely on that limited involvement to prove abandonment. *Id.* at 297-98 ¶¶ 21-30. But reasonable evidence supports the juvenile court's finding that "Mother's actions do not rise to the level of interference required" under *Calvin B.* because Father did not sufficiently show that he "actively [sought] more involvement than [Mother] would allow" throughout K.C.'s life.

**II.       The Determination That Termination of Father's Parental Rights Was in K.C.'s Best Interests Was Improperly Based on Speculation.**

**¶19**         "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). Here, the court found by a preponderance of the evidence that termination would be in K.C.'s best interests because:

> Maintaining a parent-child relationship would be detrimental to [K.C.] because father disappeared from [K.C.]'s life and has no relationship with [K.C.] If something happens to mother, [K.C.]'s only legal parent would be father. Father lives in another state and [K.C.] has a life here in Arizona and family. [K.C.] has a close relationship with maternal uncle who is like a father to [K.C.] [K.C.] asked mother to sever father's rights. [K.C.] has no relationship with father.
>
> . . .
>
> It is a benefit to [K.C.] to have . . . uncle be available as [K.C.'s] caregiver should something happen to mother.

**¶20**         Father challenges the court's finding, arguing that uncle's potential adoption of K.C. is "speculation" and "not sufficient to support a best interests finding." Father is correct. According to the Arizona Supreme Court, a parent's "wish to make a testamentary nomination of [family

members] to serve as guardians of [a child] in the event of [that parent's] untimely death" is "too speculative" to support a best-interests finding. *JS-500274*, 167 Ariz. at 7.

¶21     The superior court did identify other factual findings in support of its determination that termination was in K.C.'s best interests. However, it is unclear to this Court whether the superior court would have made the same determination if it had understood it could not consider the speculative testimony regarding potential adoption by maternal uncle.

## CONCLUSION

¶22     Because the court erred in relying on speculative evidence in making its "best interests" determination, the termination order is vacated. The matter is remanded to the superior court to conduct a new best-interests evaluation consistent with this decision.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR