NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GABRIEL G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.L., *Appellees*.

No. 1 CA-JV 21-0232

FILED 1-13-2022

Appeal from the Superior Court in Maricopa County
No. JD38260
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Acting Presiding Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**C A T T A N I**, Chief Judge:

¶1 Gabriel G. ("Father") appeals the superior court's order terminating his parental rights as to his son E.L. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 E.L. was born to Father and Irene L. ("Mother") in February 2017. Within a few months, Mother left E.L. with Mother's sister ("Aunt") while Mother was in and out of jail with substance-abuse issues. Aunt has been E.L.'s primary caregiver since that time.

¶3 Aunt filed private guardianship proceedings in October 2017 and was appointed E.L.'s temporary guardian multiple times. Late in 2019, Mother appeared and opposed the guardianship, prompting E.L.'s court-appointed guardian ad litem to file a dependency petition. After an investigation, the Department of Child Safety ("DCS") substituted as petitioner in the dependency. The superior court found E.L. dependent as to Mother. Subsequently, DCS served Father by publication, and the court found E.L. dependent as to Father.

¶4 After the court approved a severance and adoption case plan, DCS moved to terminate Mother and Father's parental rights. The court granted the termination motion as to Mother in January 2021. That same month, DCS's renewed efforts to locate Father were successful, and he appeared in the dependency proceeding in February 2021. Father established paternity the next month.

¶5 Visitation between Father and E.L. was the parties' primary focus over the following months. Because E.L. did not know Father and

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

had previously experienced separation anxiety during visits with Mother, a DCS psychologist recommended that visits be organized between Father and Aunt directly, with Aunt remaining present throughout. DCS assigned a family support partner to help Father and Aunt coordinate but otherwise permitted Father and Aunt to set visits on their own schedules. Although DCS did not set limits on the number of visits and Aunt offered him more time, Father's work schedule limited his availability. By the time of the termination adjudication hearing in June 2021, Father had participated in only four visits with E.L.

¶6            Father testified at the severance hearing. He described having physical custody of E.L. for the first four months of E.L.'s life (the first half of 2017), after which police required him to turn the child over to Mother since he did not have custody orders. Father testified that he started paperwork to file for custody but never completed the process because he could not find Mother to serve her. He stated that he tried to get in touch with Mother directly and through her family members, but they either refused to provide information or blocked contact. Father was able to visit E.L. at the maternal grandparents' house a few times while Aunt was at work, but E.L. subsequently moved. Father testified that it seemed that Mother's family was trying to keep him out of E.L.'s life.

¶7            Father testified that his recent visits with E.L. had been going well but that Aunt only allowed visits on Sundays and had blocked some of his requests for contact. Father said he would visit every day if allowed, and although he acknowledged that his work schedule made weekday visits problematic, he testified that he could visit E.L. weekday evenings and both weekend days if permitted. Father noted that, although Aunt had said he could call E.L. between visits, Aunt did not respond to his texts.

¶8            Aunt testified that E.L. had lived with her his whole life and had never lived with Father. She denied knowing who E.L.'s father was until Father established paternity after the dependency was filed and just a few months before trial. Aunt testified that Father was still standoffish during his weekly visits with E.L., and she described offering Father visits with E.L. any time he wanted, even every day. She said that Father was only available on Sundays, however, because of his work schedule. Aunt also stated that she sent Father photos and videos of E.L. and offered to allow Father to call E.L. between visits. Aunt testified that she never tried to prevent Father from having a relationship with E.L.

¶9            The superior court terminated Father's parental rights, finding that Father had abandoned E.L. and that severance would be in

E.L.'s best interests—expressly crediting Aunt's testimony over Father's contrary testimony. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶10**          The superior court is authorized to terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a severance ruling for an abuse of discretion, deferring to the superior court's credibility determinations and resolution of conflicting facts. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶11**          Abandonment, one of the statutory grounds for severance, A.R.S. § 8-533(B)(1), is defined as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Abandonment is assessed objectively based on the parent's conduct, not subjective intent. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000). Accordingly, when faced with obstacles to a continuing parental relationship, a parent must "act persistently" to establish or develop the relationship, including by "vigorously" asserting the parent's rights. *Id.* at 250–51, ¶¶ 22, 25. We have also recognized, however, that "a parent who has persistently and substantially restricted the other parent's interaction with their child may not prove abandonment based on evidence that the other has had only limited involvement with the child." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 293–94, ¶ 1 (App. 2013).

**¶12**          Father argues that the superior court erred by finding abandonment because Mother and her family interfered with his efforts to maintain a relationship with E.L. First, Father asserts that the court wrongly minimized the ways Mother's family—and Aunt in particular—

restricted his access to E.L. Father acknowledges that he had limited contact with E.L. over the years but attributes this to Mother's family concealing the child from him despite his repeated requests. But the superior court found that Father's claim that maternal relatives blocked access was not credible, and we defer to that court's credibility assessment. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. Moreover, even assuming Mother's relatives were less than forthcoming with information about E.L., Father did little else to "vigorously assert" his parental rights. *See Calvin B.*, 232 Ariz. at 298, ¶ 29 (quoting *Michael J.*, 196 Ariz. at 250, ¶ 22). As he acknowledged at trial, he never followed through with filing a family court case to establish paternity and parenting time, and he never sought outside assistance to recover his child.

¶13 Father next asserts that the court's finding that he made "minimal efforts, at best," to protect E.L. from Mother's substance abuse was not supported by the evidence because (1) in the absence of custody orders, the police forced him to turn E.L. over to Mother, and (2) E.L. lived with Aunt, not Mother, and thus was not at risk of Mother's neglect. But the former simply highlights that Father did not follow through with legal action to establish paternity and formally establish his parental rights, including legal decision-making and parenting time. And although the latter point might undercut severance on a different statutory ground such as neglect, *see* A.R.S. § 8-533(B)(2), it does not excuse Father's failure to maintain a normal parent–child relationship, which underpins the finding of abandonment, *see* A.R.S. § 8-531(1).

¶14 Father further asserts that the court's finding that he was offered (but failed to take advantage of) "significant visitation opportunities" was clearly erroneous. He notes that DCS did not offer visitation until after he established paternity and an in-house psychologist assessed the proper method for visits given E.L.'s separation anxiety, and that thereafter, his case manager never explained that he could see E.L. every day. But the visits were coordinated directly between Aunt and Father. Aunt testified that she told Father he could see E.L. anytime (and would have set more visits at Father's request), but Father only scheduled visits for Sundays because of his work schedule. To be sure, Father testified that Aunt limited visits to Sundays only and that he would have visited every day if allowed, but the superior court resolved this evidentiary conflict against him, and we do not reweigh the evidence on appeal. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). Although Father argues that the court should not have found Aunt's testimony credible, the superior court was free to do so—especially given other

corroborating evidence—and we defer to that assessment. *See Jesus M.*, 203 Ariz. at 282, ¶ 12.

**¶15**       Finally, Father challenges the court's best-interests determination, arguing that if the abandonment finding was improper, the court should not have reached the issue of best interests. *See Alma S.*, 245 Ariz. at 149–50, ¶ 8 (describing the "two-step inquiry" under § 8-533(B) as entailing first a finding of grounds for termination before assessment of whether termination is in the child's best interests). Because the superior court properly found abandonment had been proven, however, Father's best-interests argument fails.

## CONCLUSION

**¶16**       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA