NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JESSICA S., BRET S., *Appellants*,

*v.*

BRANDY R., J.S., Z.S., *Appellees*.

No. 1 CA-JV 21-0364
FILED 7-14-2022

---

Appeal from the Superior Court in Mohave County
No. B8015SV202004010, B8015SV202004011
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

Your AZ Lawyer, Phoenix
By Robert Ian Casey
*Counsel for Appellant Jessica S.*

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant Bret S.*

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Appellee Brandy R.*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge D. Steven Williams joined.

---

**S W A N N**, Judge:

¶1 Bret S. ("Father") and Jessica S. ("Mother") appeal the termination of their parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Father has two children: J.S. with Mother, and Z.S. with another woman. The parents had prior involvement with child protective agencies in Arizona and Nevada. Around 2016, the children moved in with Father and Mother in Nevada.

¶3 About two years later, Nevada's Division of Child and Family Services discovered that Father and Mother were neglecting the children. Their home was unsafe, and four-year-old J.S. consistently came to school dirty and smelling strongly of animal urine. J.S. hoarded food, had bed-wetting issues, could not speak in sentences, and could barely dress himself. Z.S. also hoarded food, and eventually disclosed that Mother and Father locked her in her room as punishment, that Mother spanked her to the point of bruising, and that a step-sibling sexually abused her.

¶4 To avoid a dependency, Father and Mother consented to the appointment of paternal grandmother Brandy R. ("Grandmother") as the children's legal guardian. The court granted a temporary guardianship, and the children moved in with Grandmother and her husband in November 2018. Over the next year, Grandmother supervised visits between Father, Mother, and the children. In October 2019, the court appointed Grandmother as the children's permanent legal guardian with Father and Mother's consent. As part of the appointment, the court ordered that visitation "will continue as it has been made available by the Guardian under the Temporary Guardianship Order and shall continue at the Guardian's discretion and upon such terms and conditions as the Guardian believes necessary to protect the best interest of the minor children, including but not limited to whether the parents shall be supervised or unsupervised."

¶5 At a visit in November 2019, Grandmother believed that Father and Mother were under the influence of drugs because she noticed they were acting "[v]ery flighty," "speaking slowly," and "their eyes were glazed." According to Grandmother, this was not the first visit where they appeared intoxicated. After the visit, Grandmother told Father that he and Mother needed "not to be high again" and that he needed to find someone else to supervise future visits. Father later testified that the only drug he had taken before the visit was a prescribed anxiety pill.

¶6 Thereafter, Father and Mother periodically texted Grandmother to try to set up visits, but they did not secure another supervisor and therefore did not visit the children again. Nor did they call the children or send them any support, cards, gifts, or letters.

¶7 In August 2020, Grandmother petitioned to terminate the parents' parental rights based on abandonment. A court-appointed investigator concluded in social studies that it was in the children's best interests for the court to grant the termination petition. After an evidentiary hearing, the superior court granted Grandmother's petition. Father and Mother appeal.

## DISCUSSION

¶8 A parent's right to custody and control of his or her own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). Severance of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* at ¶ 12. "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005) (citation omitted). The court must also find that severance is in the child's best interests by a preponderance of the evidence. *Id.* at 288, ¶ 42.

¶9 This court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶10 The superior court may terminate a parent's parental rights based on abandonment under A.R.S. § 8-533(B)(1) when the parent fails

to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct." *Michael J.*, 196 Ariz. at 249, ¶ 18.

¶11        Father contends that, as a matter of law, a guardian appointed under Title 14 cannot prove parental abandonment under § 8-533(B)(1).[1] But under A.R.S. § 8-533(A), "*[a]ny* person or agency that has a legitimate interest in the welfare of a child, including a relative, . . . may file a petition for the termination of the parent-child relationship." (Emphasis added.) Citing our supreme court's recent decision in *Timothy B. v. Department of Child Safety*, 252 Ariz. 470 (2022), Father argues that "if considering the mere option of guardianship is a constitutional pre-requisite before terminating parental rights, then the existence of a guardianship established under Arizona statutes must prevent termination of parental rights based on abandonment." *Timothy B.* held that when a parent is incarcerated and no other parent is available to provide a normal home for the child during the incarceration term, the court should consider as a factor for termination the availability of a Title 8 permanent guardian to provide a normal home life. *Id.* at 476–77, ¶¶ 25, 27. Nothing in *Timothy B.* suggested that the appointment of a guardian automatically prevents the termination of parental rights.

¶12        Father also argues that because he expressly transferred his parental duties via the guardianship, his failure to undertake those duties cannot form the basis of an abandonment. Mother likewise argues that "a guardianship practically and legally impede[s] the possibility of a parent-child relationship" and therefore cannot be used to create a de facto

---

[1]        Though it is unclear from the record if the requirements of A.R.S. § 14-5204 were met before the court issued the guardianship orders, the superior court retained jurisdiction. *See* A.R.S. § 14-5204 (allowing the court to appoint a guardian for a minor "if all parental rights of custody have been terminated or suspended by circumstances or prior court order"); *In re Mikrut*, 175 Ariz. 544, 546 (App. 1993) (guardianship order entered in error under § 14-5204 did not affect subject-matter jurisdiction).

severance. The appellants' suggestion that transferring their parental duties via a guardianship somehow provides indefinite immunity from a judicial finding of abandonment is neither accurate nor persuasive.

¶13 The appellants alternatively assert that the court erred in applying the abandonment statute because it failed to consider how the guardianship restricted their ability to maintain a normal parental relationship with the children. The appellants' argument is unpersuasive for several reasons.

¶14 First, the appellants invited the limitations when they consented to the guardianship orders and never sought to have them revoked as years passed. Second, though the court should consider (like any other fact in evidence) the existence and effect of a guardianship before finding abandonment, *see Timothy B.*, 252 Ariz. at 476–77, ¶¶ 25, 27, the appellants do not show how the court failed to do that here. To the contrary, the court heard evidence about the guardianship and its effect on the appellants and expressly recognized that evidence in its final order.

¶15 Moreover, though a guardian "has the powers and responsibilities of a custodial parent" for the child's support, care, and education, A.R.S. § 14-5209(A), the guardian's appointment does not prevent a parent from maintaining a relationship with his or her child or assisting the guardian with the child's needs. Indeed, when "circumstances prevent [a parent] from exercising traditional methods of bonding with his [or her] child, he [or she] must act persistently to establish the relationship however possible and must vigorously assert his [or her] legal rights to the extent necessary." *Michael J.*, 196 Ariz. at 250, ¶ 22 (citation omitted). The appellants did not act vigorously in this case. Though Grandmother agreed to supervise visits for the first year, the appellants visited inconsistently. Thereafter, the appellants did not visit, call, or write the children. Nor did they provide gifts or support for them.

¶16 The appellants assert, however, that Grandmother interfered with their ability to visit the children by requiring another person to supervise them. To be sure, a parent may have just cause for limited involvement with his or her child if another "persistently and substantially restricts the . . . parent's interaction with their child." *See Calvin B. v. Brittany B.*, 232 Ariz. 292, 293, ¶ 1 (App. 2013). But that was not the case here. The appellants argue that they lacked funds to employ a visitation agency for supervision as Grandmother first required. But any financial constraint on the appellants' ability to visit the children was removed when Grandmother later told Father that the supervisor could be a mutually

agreed-upon adult. Grandmother offered that her husband would supervise so long as another person also attended, and she agreed to Father's suggestion to have his roommate supervise. The appellants did not, however, act to arrange supervised visits or otherwise contact the children.

**¶17** On this record, the superior court reasonably found abandonment.

## CONCLUSION

**¶18** We affirm.

