NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.F.

No. 1 CA-JV 23-0181
FILED 3-12-2024

Appeal from the Superior Court in Maricopa County
No. JS520513
The Honorable Sigmund G. Popko, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Stuart & Blackwell, PLLC, Chandler
By Cory A. Stuart
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Michael S. Catlett joined.

**M O R S E**, Judge:

¶1 Bryanna M. ("Mother") appeals from the juvenile court's order terminating her parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Mother and Johnny F. ("Father") are the biological parents of C.F. ("Child"), born in May 2015. Mother and Father began living together in 2014. A couple of years later, Father and Mother stopped living together and ended their relationship. Father and Mother then agreed to an alternating-week parenting-time schedule for Child.

¶3 In May 2016, Father petitioned the court to memorialize the parenting-time schedule. Mother continued to exercise her parenting time with Child.

¶4 In March 2017, Father petitioned the court to modify legal decision-making, parenting time, and child support. The court awarded Father sole legal decision-making authority, modified Mother's parenting time, and established her child support obligation. The court explained that if Mother submitted to weekly random drug testing for three consecutive months, without missed or diluted tests, her parenting time would revert to the alternating-week schedule. Mother continued to exercise her parenting time with Child as modified by the court.

¶5 In February 2020, Father again requested that the court modify Mother's parenting time. The court modified Mother's parenting time to supervised visitations. The court also provided that if Mother submitted to weekly random urinalysis testing for three consecutive months, without missed or diluted tests, her parenting time would revert to unsupervised visitation. Following this modification, Mother requested phone calls with Child, but Father refused and told her to arrange supervised visitations. Mother did not set up supervised visitations through an agency, and Father rejected Mother's requests for supervised visits with maternal grandmother or paternal grandmother. On other occasions, Mother asked for Child's school and medical information, but Father refused to provide it. During this time, Mother did not submit to weekly drug testing as required by the court's modification orders and was behind on child support payments.

¶6 In November 2022, Father married. The following month, Father filed a termination petition, alleging Mother abandoned Child and was unable to parent Child due to chronic substance abuse. Mother

contested Father's petition. The court set an adjudication hearing for June 2023.

¶7 After a three-day hearing, the court denied termination under the chronic-substance-abuse ground but granted it as to the abandonment ground and concluded Father had proven by clear and convincing evidence that Mother abandoned Child without just cause. The court based its finding on Mother's failure to pay child support, maintain regular contact with Child, and provide normal parental supervision over Child "for a period far more than the statutory six months." The court also concluded that Father's actions—which may have made it difficult for Mother to maintain regular contact with Child—or his failure to "comply with the family court order to keep Mother informed of certain details of Child's life," did "not amount to a defense under *Calvin B. v. Brittany B.*, 232 Ariz. 292 (App. 2013)." The court also found by a preponderance of the evidence that termination was in Child's best interests because Father's spouse ("Stepmother") was willing to adopt Child.

¶8 Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶9 Parents have a fundamental right to the custody and control of their children, but that right is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). To terminate a parent's rights, a court must (1) find a statutory ground for termination under A.R.S. § 8-533 by clear and convincing evidence and (2) determine, by a preponderance of the evidence, that termination is in the child's best interests. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 474, ¶ 1 (2023); *see* A.R.S. § 8-533(B) (requiring at least one statutory ground and a best-interests finding). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we accept the court's findings of fact if reasonable evidence supports them and will affirm the "court's legal conclusions" terminating parental rights unless they are clearly erroneous, *Brionna J.*, 255 Ariz. at 478–79, ¶ 31. The court's findings are not clearly erroneous unless this Court determines "as a matter of law that no one could reasonably find the [supporting] evidence" meets the applicable burden of proof. *Brionna J.*, 255 Ariz. at 478–79, ¶ 31 (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

## I.     Abandonment.

¶10          Parental rights may be terminated when a parent abandons a child.  A.R.S. § 8-533(B)(1).  Abandonment is defined in A.R.S. § 8-531(1):

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

Abandonment is assessed objectively based on the parent's conduct, not her subjective intent.  *Michael J.*, 196 Ariz. at 249–50, ¶ 18; *see Kenneth B. v. Tina B.*, 226 Ariz. 33, 36–38, ¶¶ 15–16, 22 (App. 2010) (concluding a court could find abandonment despite an absent parent's subjective intent not to abandon a child).

¶11          Mother argues that she "made more than minimal efforts to maintain a relationship with [Child] and Father's actions hindered the parent-child relationship."  The court must consider "whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship."  *Michael J.*, 196 Ariz. at 249–50, ¶ 18.

¶12          Mother specifically argues that she made more than minimal efforts to support and communicate with Child by having Child on her health insurance plan since birth, purchasing gifts for Child, providing items to her mother to give to Child, requesting phone calls with Child after the 2020 modification order, and contacting agencies and offering names of relatives to supervise visits.  The court heard evidence that Mother claimed to have purchased thousands of dollars' worth of gifts for Child and provided gifts to Child through her mother but also heard evidence that Mother was in arrears of child support payments and noted that Mother offered "no explanation" as to "why that money could not have been used to make child support payments over time."  Further, the court heard testimony from Mother and Father that he prohibited Mother from speaking with Child on the phone after the 2020 modification order, and the record shows that Mother contacted Father "approximately 12 times" attempting to speak with Child during that time.  But the court noted that

aside from her testimony, "Mother offered no corroborating evidence and was unable to offer specific details of her attempts" to contact agencies and offer names of other individuals that could have supervised visits. The court also noted that Mother did not "offer any explanation of why she did not ask the family court to review Father's refusals" as unreasonable. The court "credit[ed]" Father's testimony and evidence that Mother did not have regular contact with Child nor provided normal parental supervision over Child. We do not reweigh the evidence considered by the juvenile court. *Oscar O.*, 209 Ariz. at 336, ¶ 14.

¶13 Mother also argues that Father hindered her from maintaining a normal parental relationship with Child. Mother specifically argues that the court's 2018 and 2020 modification orders indicated that Child had a good and positive relationship with Mother and that nothing in the record demonstrates that phone calls with Child would have been detrimental to Child. Mother argues that Father "was aware [Child] was in counseling because she missed" Mother and that he withheld information from Mother concerning Child's health and education. But the court concluded that Father's actions did not amount to a defense under *Calvin B.*

¶14 In *Calvin B.*, the mother interfered with the father's ability to develop a normal relationship with their child by violating a court-ordered visitation plan, and the father "actively sought more involvement" and pursued legal remedies despite the mother's efforts to restrict his access to their child. 232 Ariz. at 295, 297–98, ¶¶ 11, 22, 29. In contrast, here the court found and the record shows that (1) Father "sought to enforce the existing family court order" by requiring Mother to submit to weekly drug tests to revert back to unsupervised visitations, (2) Father's requirement for Mother to provide clean drug tests "was nothing like the [mother's] contumacious conduct in *Calvin B.*," and (3) Mother failed to "vigorously and persistently" assert her legal rights by seeking court action. The record shows that Mother did not seek court action after Father refused her requests. Even though Mother claims that she could not afford supervised visitations, Mother did not vigorously attempt to arrange supervised visitation—she did not inform the court of her inability to pay for supervised visitation through an agency nor suggest any other supervision alternatives after Father declined to allow the grandmothers to supervise. More importantly, Mother could have unilaterally eliminated the requirement for supervised visitation by submitting to weekly drug tests, which she failed to do for over two years. Nor did she seek any relief from the court regarding weekly drug tests.

**¶15** Although contested, reasonable evidence supports the court's factual findings that Mother abandoned Child, and we cannot conclude that the court clearly erred in terminating Mother's parental rights.

## II. Best Interests.

**¶16** Termination is in a child's best interests "if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶¶ 12–13 (2018) ("The 'child's interest in stability and security' must be the court's primary concern." (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016))). The best-interests finding "focuses primarily upon the interests of the child, as distinct from those of the parent." *Kent K. v. Bobby M.*, 210 Ariz. 279, 287, ¶ 37 (2005). In conducting the best-interests inquiry, "courts must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability." *Alma S.*, 245 Ariz. at 148, ¶ 1.

**¶17** Mother argues that the court did not consider the totality of the circumstances, including Mother's rehabilitation efforts, Child's need for counseling because she missed Mother, and Father's actions to prevent Child from having relationships with maternal relatives. In addition to Child's adoptability, the court noted that Mother had not "offered any substantial evidence of her rehabilitation," even though Mother testified that she "had engaged in drug treatment." The court gave "little weight to Mother's testimony in this regard" and was in the "best position" to weigh any other factors in conducting its best-interests inquiry, notwithstanding Child's need for counseling and Father's efforts to prevent Child from developing relationships with maternal relatives. *Oscar O.*, 209 Ariz. at 334, ¶ 4.

**¶18** As to adoptability, a "current adoptive plan is one well-recognized example" of a benefit of termination. *Id.* at 334, ¶ 6; *see Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) ("One factor the court may properly consider in favor of [termination] is the immediate availability of an adoptive placement."). The court found Stepmother is "ready, willing, and able to adopt Child" and "that Child is in a loving and supportive environment and all her needs are being met." The court also concluded that "Child has bonded with [Stepmother] and she parents [Child] as a natural mother would." The record supports these findings. Thus, based on Stepmother's desire to adopt Child, the court did not clearly err in finding that termination was in Child's best interests.

**CONCLUSION**

¶19      We affirm.